State ex rel. Whitaker vs. Adams et al.

## No. 11,526.

### STATE EX REL. E. S. WHITAKER VS. THOMAS R. ADAMS ET AL.

The provisions of Article 201 of the Constitution, that for any of the causes enumerated in Article 196 district attorneys, clerks of court, sheriffs, coroners, recorders, justices of the peace, and all other parish, municipal and ward officers, shall be removed by judgment of the District Court of the domicile of such officer (in the parish of Orleans the Civil District Court) are not exclusive of all other methods by which municipal officers may be displaced. The power granted by the General Assembly in Secs. 58 *et seq.* of the charter of New Orleans to the Common Council to remove the recorders of the Recorder's Courts by impeachment proceedings is constitutionally granted.

APPEAL from the Civil District Court, Parish of Orleans. *Rightor, J.*

*Farrar, Jonas & Kruttschnitt* Attorneys for Relator, Appellee:

When a Constitution provides for the qualification of certain officers, for their removal for certain causes, by certain authorities, and in a certain way, a Legislature is incompetent to prescribe, as to those same officers, for different qualifications, different causes of removal, different authorities or different ways. It can neither add nor take from the constitutional provisions on those subjects. State *ex rel.* Downes vs. Towne, 21 An. 490; State *ex rel.* Robinson vs. Dranguet, 23 An. 784; State *ex rel.* Koppel vs. Thompson, 28 An. 444; State *ex rel.* Lemonnier vs. Beard, 34 An. 273; Richard vs. Rousseau, 35 An. 933; Cooley's Constitutional Limitations, 6th Ed., pp. 78, 79.

*E. A. O'Sullivan*, City Attorney, for Defendants and Appellants:

Sections 58, 59, 60, 61 and 62 of Act 20 of 1882, City Charter, are constitutional. They do not violate Arts. 196 and 201 of the Constitution of 1879.

The police recorder of the city of New Orleans is not a constitutional officer, but is a creature of the Legislature. 10 An. 620, State vs. Ramos.

The Constitution, giving the power to the General Assembly to provide for police or magistrates' courts, likewise gave it the power to enact laws for the government of said courts.

The power of impeachment and amotion is inherent to all political corporations, unless specially denied. Richard vs. Rousseau, 35 An. 933.

Constitutional officers can not be impeached or removed for other causes than those specified in the Constitution; officers not mentioned may.

Officers created by the Legislature under constitutional power may be impeached and removed for causes assigned by the Legislature. Behan vs. Judges, 35 An. 1075; Lemonnier vs. Beard, 34 An. 273.

---

The opinion of the court was delivered by

NICHOLLS, C. J. The question submitted to us for decision is whether, whilst the recorder of the First Recorder's Court of the city of New Orleans is present, able and willing to perform the duties of his office, he can be suspended from exercising his functions and temporarily replaced by the recorder *pro tem.*, through an order of suspension from the mayor of the city, this order being grounded upon the pendency of impeachment proceedings before the City Council directed against the recorder.

Defendants invoke, in favor of the affirmative of this proposition, Section 58 *et seq.* of Act No. 20 of 1882, known as the Charter of the City of New Orleans, which confer upon the common council the power of impeachment, and name the recorders of the city, among others, as holding their offices subject to this power.

Relator's contention, on the other hand, is that for high crimes and misdemeanors, for non-feasance and malfeasance in office, for incompetency, for corruption, favoritism, extortion or oppression in office, or for gross misconduct or habitual drunkenness, an exclusive method of removal from office is provided by Article 201 of the Constitution, which declares that for such causes district attorneys, clerks of court, sheriffs, coroners, justices of the peace, and all other parish, municipal and ward · officers, shall be removed by judgment of the District Court of the domicile of such officer, and that the office which he holds is one of the offices covered by the article.

Recorders of New Orleans are part and parcel of the machinery of the city government. They are not constitutional officers. The Recorder's Court is purely a statute court. It might be conceded that the recorders, as to removal from office, fall under the terms of Article 201 of the Constitution without determining the issue raised in this case.

The real issue is whether the power of removal referred to in the article of the Constitution is identical with the power of amotion, impeachment or *quasi* impeachment, on which the defendants base their right to act, and whether proceedings under Article 201 are exclusive of any other method by which municipal officers may be displaced. If the two proceedings are referable to separate and distinct powers as the source from which they spring, and the former method of removal is not necessarily exclusive of the latter, the provisions of Article 201 of the Constitution do not control this case. Relator's contention that he is not "*removable for cause*," otherwise than by the Civil District Court, could be well admitted as thoroughly correct if "judicial" proceedings be referred to, and yet the course pursued by the defendants be perfectly sustainable as legal.

That the General Assembly conceived there was a difference between "judicial removals for cause after trial," and impeachment, *quasi* impeachment or amotion of its officers by a municipal body acting politically and in the discharge of an administrative duty, and that both could be resorted to though under different circumstances and varying conditions, appears on the face of the act; for whilst Section 49 declares that for the causes specified in Art. 196 of the Constitution the recorders shall be "removed" in the manner pointed out by Art. 201, Sections 58 *et seq.* confer expressly upon the council the power of "*impeaching*" these same recorders.

We are of the opinion that the Legislature was justified in making the distinction it did. Proceedings for the removal of officers, whether by that name or that of impeachment, addressal, expulsion, amotion, or *quasi* impeachment, do not properly and regularly belong to the judicial department; they are universally recognized as arising in and from the exercise of the political power of the State, lodged in its legislative and executive branches. If the judiciary has jurisdiction in any manner, shape or form over such proceedings it is only by virtue of direct special exceptional grant. Whilst the distribution of the different powers in a State to the different depart-

State ex rel. Whitaker vs. Adams et al.

ments is of course under the control of the convention which framed the organic law, and it is at liberty in its apportionment of powers to depart in greater or lesser degree from what is and has been for generations regarded as the functions legitimately belonging to each and those separating each, and such action must be maintained and enforced, it is none the less true that such action preserves a distinctive exceptional character.   As exceptional in its nature it has to a degree to be construed as to its scope by the rules governing exceptional legislation.   Whilst full effect is to be given to it, it should be kept within precise limits and not be extended beyond the cases evidently contemplated to be covered by it.   The reason, the object and the purpose to which it owed its origin must be constantly kept in view.

It must be conceded that in adopting Art. 201 of the Constitution the convention made not only a departure, but a very great departure from established principles.   We are therefore of the opinion that when it provided a method for the removal of officers through courts, after a full trial and slow and regular judicial proceedings, it intended to establish special and additional, and not an exclusive method of removal, and that if the proceeding be exclusive it is exclusive only to the extent that it has been so specially made by express declaration.   What was the object and purpose of this extraordinary grant of exceptional power to the judiciary?   In our opinion, it was to furnish a guard and a protection against the unjustifiable continuance in office of incompetent and unworthy officers, by giving to the people, acting directly in their own right, a special remedy to which they could themselves have free recourse, independently of the official action of others.   *Without* this article the people would have to rely entirely for relief upon the Governor, or General Assembly or the municipal authorities, who, no matter how great the occasion or cause for action might be, would be free to act or not as they thought proper.   *With* the article they could of themselves force an issue in any given case—wilful inaction, misplaced friendship, or partisan favoritism to the contrary notwithstanding.

A second purpose was to substitute, in lieu of the removal of officers by addressal by mere resolution, the special method of removal through judicial proceedings, without interfering or clashing with other powers either of the Legislature or of the municipal authorities.

That the convention did not think that the method of removal of officers provided for by Article 201 was exclusive of others of and by

its own force, but required a direct affirmative declaration to that
effect to make it exclusive, will appear from Article 152, in which it
is provided that quoad addressals from office by the Legislature it
should be so to the extent of its terms.

The absolute deprivation of the political right of holding an office
under the State, or of holding a municipal office under the City
Charter, brought about through the instrumentality of the Legis-
lature or the municipal authorities, is something other and different
from the temporary displacement of an officer from an office to
which he might again be legally elected or appointed, operated
through the courts by regular judicial proceedings.

The source of power of the two proceedings is not only different,
but the penalty is different and the character of the proceedings is
different, one being political and administrative, the other being
judicial by constitutional grant. A proceeding for the "judicial"
removal of a district judge would not bar an "impeachment" pro-
ceeding by the Legislature against the same judge for the same
offences whilst he was still in office. Pursuing the subject further,
we find that the Constitution reserved and gave to the General As-
sembly full power and control over the creation of a government for
the City of New Orleans. It did so with knowledge of and with refer-
ence to the well recognized existence inherently in municipal cor-
porations of the power of removal or amotion of its officers, and in
giving this unrestricted power to the General Assembly it must have
contemplated and did contemplate that in creating the corporation
the Legislature would deal with that power, either widening or re-
straining it, as in its judgment it would deem best. The General
Assembly, under the Constitution, had the power to determine what
the officers of the corporation should be, and to define and fix their
respective duties. It had the right to fix and determine what the
qualification for those offices should be—the terms and conditions
upon which they should be assumed, and the terms, conditions and
circumstances under which they should be vacated. Every person
accepting office under the City Charter accepted it on the conditions
constitutionally affixed to the office in the charter.

The Recorders' Courts, as we have said, are part of the machinery
of the City government. They were not organized by direct special
act, under the grant of power conveyed in Art. 136 of the Consti-
tution, but through the act organizing the City under the constitu-

tionally reserved and granted power of creating a government for the City. The courts are purely statute courts, liable to entirely disappear by legislative action, and subject to modification as to their powers, just as is the City government of which they form a part.

We do not think that any of the decisions quoted by relator reach this case. The only point decided in Richard vs. Rousseau, 35 An. 934, was that Art. 201 of the Constitution had no reference to minor officers elected by the various parish and municipal corporations of the State. The mind of the Chief Justice, who was the organ of the court on that occasion, was as to who was *outside* of the provisions of the article, not who was inside of the same, nor what the *effect* of being within it would be.

The fact referred to in relator's brief, that the recorders are elected by the people and not by the Common Council, would perhaps have furnished a good argument before the Legislature in favor of withholding the power of amotion from reaching the recorders, but it does not legally affect the situation when the General Assembly has thought proper not to do so, and there was no constitutional obligation on its part to withhold it. It must be observed, however, that the Mayor of the City and other officers elected by the people are brought under the operation of the same power. It may also be observed that the attention of the Legislature seems to have been directed to this subject, and to the cases of the officers elected by the people, as in one respect it distinguishes them from those elected by the Council, for Sec. 30 of the act declares *" that in addition* to the power of removal by way of impeachment the Council shall have power to *remove* at any time from office any officer of the Council *elected* by them by resolution declaratory of its want of confidence in said officer, provided that two-thirds of the members elected to said Council shall vote in favor of said resolution." (Italics ours.)

In the minds of some persons it may doubtless be considered unwise to have lodged in the Common Council as much power over the elective officers as the General Assembly has granted to it, but we are not to deal with statutes from what we might consider impolitic or unwise. The issues which are presented in this case are similar to those in the case of the State *ex rel.* Behan vs. Judge, 35 An. 1075, though advanced at a little later stage of the impeachment proceedings and presented under a somewhat different form. The

decision in that case strongly supports the views herein expressed. We discover no unconstitutionality in Act No. 20 of 1882 in the respects complained of. The impeachment proceedings being legal, the order of suspension based thereon was also legal. For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that relator's demand be rejected at his costs.

### CONCURRING OPINION.

WATKINS, J.   The statement of this case is best given in the language of the relator's petition, thus:

"That your relator was, on the 22d day of April, 1892, elected Recorder of the First Recorder's Court of the City of New Orleans, for the term of four (4) years.

"That he was thereafter duly commissioned, qualified and took possession of, and enjoyed the office of Recorder of the First Recorder's Court of the City of New Orleans, until the 18th day of January, 1894, when one Thomas R. Adams did usurp, intrude into and unlawfully take possession of the said office of Recorder of the First Recorder's Court of the City of New Orleans, and has ever since continued to usurp, intrude into, unlawfully hold and exercise the functions of said office, to which your relator is lawfully entitled, and which he has the right to exercise.

" That the said Thomas R. Adams claims the said office by virtue of a certain *alleged order of the Mayor of the City of New Orleans, suspending your relator as Recorder of said court, and by virtue of certain alleged proceedings taken by the Common Council of the City of New Orleans, through its Committee on Public Order, as also through all of its members, sitting as an alleged court of impeachment, to remove your relator from the office aforesaid.*

" *That said alleged order of suspension, and said proceedings of said City Council* are all taken under authority alleged to be vested in said Mayor and said Common Council, and its Committee of Public Order, under the Charter of said City, being Act No. 20 of the Acts of the Legislature of the State of Louisiana for the year 1882, and especially under Sec. 19, and Secs. 58 to 62, inclusive, of said Act.

" Relator further avers that said Act of the Legislature of the year 1882, and especially the hereinabove named sections of said Act, *in*

*so far as the same purport to confer upon the Mayor of the City of New Orleans, or the members of the Common Council of said City, or any number of them, any power to suspend your relator as Recorder of said Court, or to remove him from his office as Recorder of said Court, are unconstitutional, null and void, for this, that the said Act, in so far as it vests any power in said City Council or in said Mayor to suspend or remove your relator from office, vests in said Mayor and Common Council judicial functions, in violation of Arts. 14 and 15 of the Constitution of the State of Louisiana, and it also violates Arts. 196 and 201 of said Constitution, which confer upon the Civil District Court for the Parish of Orleans alone the power of removing your relator from said office.*

"That the said Thomas R. Adams, notwithstanding the premises, pretends and claims that he has the right to exercise the duties of the First Recorder's Court of the City of New Orleans; that he is entitled to perform the duties of said office, and to receive the salary thereof, notwithstanding the fact that your relator is not sick, nor absent from the City of New Orleans, nor legally suspended from office."

The prayer of the petition is that the said Thomas R. Adams may be ousted from the said claim, and debarred from asserting the same against relator; that it may be adjudged and decreed that he is the Judge of said First Recorder's Court, and entitled to perform its functions and to receive its profits, honors and emoluments, notwithstanding said order of suspension and the proceedings of the City Council looking to his impeachment and removal from office.

The answer is, practically, a general denial, coupled with an averment of the Mayor's right to suspend the relator from the performance of the duties of his office, under the powers vested in him by law.

It further avers that the provisions of the City Charter in no manner conflict with the Constitution, the relator being a municipal, and not a constitutional officer. That recorders' courts in the City of New Orleans were for the first time created by the City Charter of 1882, and for that reason the provisions of the Constitution (adopted in 1879) did not include the judges of these recorders' courts. That, as these offices were crea ed by the Legislature, it was competent for it to indicate the mode of electing and displacing the incumbents of them; and, for that reason, the act of the Legislature does not come in conflict with the Constitution.

On these issues the case was tried and judgment was pronounced in favor of the relator, and the respondent has appealed.

The Judge *a quo* assigned as his "reasons for judgment" that the relator is a municipal officer, and comes within the designation and provisions of Art. 201 of the Constitution, viz.: "and all other, parish, municipal and ward officers;" and that "the formidable power and responsibility of removal having been, by the sovereign will, formulated in the Constitution, lodged in the *judiciary alone*, can not be delegated by the Legislature—a co-ordinate department of the State government—to another body of magistracy. A consideration of Arts. 14 and 15 of the Constitution makes this conclusion more inevitable and imperative. "The Mayor and Common Council are without power in the premises."

It is evident that the judge *a quo* accepted the theory of relator's counsel, as set out in his petition, to the effect that the legislative grant of power to the Common Council of the City of New Orleans— Act 20 of 1882—to impeach, and to the Mayor to suspend a municipal officer, is unconstitutional and void, because it is a *judicial power* of removal, which, by the terms of Art. 201 of the Constitution, is confided *exclusively* to the Civil District Court, and, consequently, can not be exercised by any other department of the State government, "nor by any person or collection of persons holding office in them." Arts. 14 and 15 of Constitution of 1879. And it is equally evident that this supposed conflict between the City Charter and the Constitution arises from the fact that the power conferred on the Common Council and the Mayor is the *same* power that is conferred on the Civil District Court; otherwise, Arts. 14 and 15 of the Constitution would have no applicability to the question under consideration.

No other ground is assigned for the unconstitutionality of the City Charter, and no other can be considered. This supposition of counsel must be correct, otherwise the position assumed is illogical. And attention is attracted at this time to the position that is assumed by the relator in order to disembarrass the argument of any reference to the question of the constitutional authority of the Legislature to impart *political* power to the municipality cf New Orleans.

But, is the legislative grant of the power of removal by impeachment which the City Charter confers upon the Common Council of ᐩhe City of New Orleans, and the power of suspension conferred upon

NEW ORLEANS, MAY, 1894. 839

State ex rel. Whitaker vs. Adams et al.

the Mayor, in any sense a *judicial power*, incompatible with the power that is conferred by Art. 201 of the Constitution on the Civil District Court?

That question was, in effect, decided just the other way in State *ex rel.* Behan vs. Judge, 35 An. 1075. That was a case of prohibition issued by this court against one of the Judges of the Civil District Court, who had granted an injunction restraining and prohibiting the Common Council of the City of New Orleans from further proceeding with the impeachment of City Treasurer Walsh, and the Mayor from in any manner interfering with said Treasurer in the possession and administration of his said office.

"The preliminary writ of injunction," says the Court, "was granted at the instance and request of the Treasurer, and was predicated mainly on his allegations, and on the District Judge's opinion, *that the provisions of the City Charter which authorize the removal of City officials by impeachment by the City Council were in direct violation of the Constitution.*"

And in its analysis of the respondent judge's defence to the writ of prohibition the court said:

" The alleged unconstitutionality of the proceedings is (subject) to two subdivisions, viz.: (1) that in organizing a court of impeachment, the City Council was usurping judicial functions, in violation of Arts. 14 and 15 of the State Constitution; (2) that the provisions of the City Charter on the subject of impeachment were violative of the Constitution, Arts. 196 and 201, which had conferred (upon) the judiciary department the *sole* power of removing *municipal* officers."

And in considering and disposing of that defence, the court found the municipal corporation was controlled by a legislative charter, which had then been recently granted in pursuance of the authority delegated by the 254th article of the Constitution—this charter specifically recognizing the *inherent power of amotion* of municipal officers as existing in the corporation, and making additional provision for the exercise of that power by impeachment.

" We therefore hold," said the court, in summing up its opinion on the two propositions above stated, " both in reason and on abundant authority, that no court of justice had the legal power to interfere, by preliminary injunction, with the municipal council in the

*exercise* of that franchise, one of its plainest and most essential administrative functions," etc.

Entertaining this opinion, the court, of necessity, made the writ of prohibition peremptory, and the twofold effect of the judgment was, first, to maintain the perfect consonance of the impeachment proceedings of the Common Council, with removal proceedings contemplated under Art. 201 of the Constitution, because the former were legislative and the latter were judicial; second, because the power of amotion of municipal officers is *inherent* in all municipal corporations, entirely distinct from and independent of the power of removal provided for in the 201st article of the Constitution; which inherent power of amotion found expression in the City Charter in the shape of provisions looking to the impeachment of such municipal officers.

That decision clearly shows that the power of impeachment is not a *judicial* but a *legislative* function, and being a legislative function the power of impeachment did not come in conflict with Arts. 201, or 14 or 15 of the Constitution.

That decision proceeds on the theory that the act of the Legislature did not confer a power of removal *per se*—being examined and considered extrinsically—but recognized the existence of a power of amotion that is inherent in all municipal corporations, and apparently conferred upon the Common Council of New Orleans authority to exercise it by means of impeachment.

Yet the court did not pass upon the question of the constitutional right of the Legislature to provide that means of amotion, but distinctly left that question open for future settlement.

A careful examination and consideration of the principles announced in the Behan case clearly indicate that they must control the decision of the present case, because the issues are almost identical.

In that case the Common Council had inaugurated impeachment proceedings for the amotion of the City Treasurer for certain crimes and misdemeanors specified in the City Charter, and said treasurer resorted to an injunction in the Civil District Court for the purpose of arresting their further progress, and to prevent his suspension from office by the Mayor, pending the trial of the impeachment.

In this case the same council inaugurated like impeachment proceedings for the amotion of the relator as City Recorder for certain

·causes assigned in the City Charter, and relator resorted to this suit in the Civil District Court for the purpose of ousting the respondent from the office to which he had been elected, and from which he had been suspended by the Mayor, pending the impeachment trial—relator contending that his suspension and respondent's appointment were illegal, because of the illegality of the impeachment proceedings resulting from the unconstitutionality of the City Charter in that particular.

The only possible difference that is discoverable between the two cases is in the fact that the impeachment proceedings have gone a little further in this case than they had in the Behan case—the *Mayor having actually suspended the relator and appointed the respondent in his stead* to act *ad interim.*

This being the exact situation of the case, was not the Civil District Court asked to do just what it was prohibited from doing in the Behan case—namely, restrain impeachment proceedings of the City Council? And does not this appeal invite this court to undo what that court has done, on the same ground and for like reason that it made Mayor Behan's writ of prohibition peremptory? Undoubtedly it does.

Realizing, doubtless, the difficulty of this situation, counsel for relator attempts, by argument, to break the conclusive force of the Behan case, by citing from the opinion that paragraph in which the court states that the view taken of that controversy obviated the " necessity of passing on the alleged unconstitutionality of the City Charter *on the subject of impeachment* "—the court holding that its conviction was clear to the effect that the District Court had wrongfully exceeded the bounds of its jurisdiction in enjoining the City Council in the *exercise of its power of amotion* of a municipal officer, albeit the process of amoting the officer was by statutory impeachment. But it seems clear that counsel entertain a proper conception of the distinction that was made by the court when they make, in their brief, the following statement:

" In the Behan case a judge of the Civil District Court had enjoined the City Council from prosecuting impeachment proceedings against Walshe. The Supreme Court issued a writ of prohibition against this exercise of jurisdiction by the District Court upon the old and well settled principle that a court will not interfere with the legislative or *quasi*-legislative proceedings of a municipal body, but

will restrict its interference to a protection of persons and property against unlawful interference with rights by any one claiming under color of a void municipal ordinance or resolution. This was the decision in the Behan case, and anything else was clearly *dictum*."

But, as is shown in this argument, this controversy is in the identical situation of the Behan case—Whitaker, recorder, and Walsh, treasurer, occupying identically the same plane as municipal officers, and equally without right of action in the Civil District Court to arrest the impeachment *proceedings pendente lite*.

And while the proposition announced by counsel for relator, that the jurisdiction of the Civil District Court will be recognized—and was in the Behan case recognized—to protect the rights of "persons and property against unlawful interference by any one claiming under a void municipal ordinance or resolution," may be accepted as correct as a general proposition, yet it does not go to the extent counsel claim it does. The theory of the court doubtless was that the rights of persons and property could be tested and determined by the *courts after* the impeachment proceedings were carried to the period of finality, and not while they were in motion; for, *non constat*, that the impeachment court would fail of convicting the municipal incumbent. But that, in the event of conviction, the removed official might then test before the courts of justice the constitutionality of the law which conferred the power to impeach; or, in other words, whether the terms and provisions of the Constitution were sufficiently broad and comprehensive to permit the General Assembly to confer on the municipal corporation the legislative power of impeachment as a means of amotion of municipal officer, and to entail as a consequence future deprivation of the right of the incumbent to hold municipal office.

But that is not the present situation of the Whitaker case. The impeachment court has not yet disposed of the questions before it, and having as yet arrived at no conclusion, and rendered no judgment, the stage at which the jurisdiction of the *courts* has its inception has not been reached.

My conclusion is that in so far as the question of the unconstitutionality of the City Charter, on the ground that it is an attempt to vest in the Common Council of the City of New Orleans and the Mayor a power of removal that, by the Constitution, is exclusively conferred on the Civil District Court of New Orleans, is concerned, it must

State ex rel. Whitaker vs. Adams et al.

be answered in the negative; and that, in so far as the question of the constitutional power of the General Assembly to vest in the Common Council of the City of New Orleans the power of impeaching municipal officers, and entailing, as a consequence of conviction, deprivation of the right of the ousted official to thereafter hold municipal office, is concerned, no authoritative opinion can be *now* pronounced, because (1) it is not made an issue in this case; and (2) it can become a question for the *courts* only when the impeachment proceedings have been completed, and the rights of persons or property are properly put at issue thereunder, and said *proceedings and decree* are set up as the foundation of some right or claim, or same are relied upon as the muniment of some title to office.

For these reasons I concur in the opinion and decree reversing the judgment appealed.

### CONCURRING OPINION.

McENERY, J. The principle contended for by relator, that when the organic law provides for the removal of an officer it is exclusive of any other mode than that pointed out in the Constitution, admits of no controversy.

The Recorders' Courts in the City of New Orleans are part of the judicial system provided for that City by the Constitution. Const., Art. 136.

The recorder is a judicial officer, possessing generally the power and authority of a judge. 4 Dall. 299.

But the Recorder's Court is not a court of record within the meaning of Art. 196 of the Constitution. Therefore that article providing for impeachment of judges of courts of record can have no application to this case. The recorder is excluded from the rule of removal provided by said article and Art. 197 by Articles 201 and 93.

There are three modes provided by the Constitution for the removal of recorders of the City of New Orleans for high crimes and misdemeanors: (1) by suit before the Civil District Court, Parish of Orleans, in accordance with Art. 201; (2) by impeachment; (3) on address of two-thirds of the members elected to each house of the General Assembly. The last two modes are provided for by Art. 93 of the Constitution.

It is generally conceded that Art. 197 of the Constitution, vesting the sole power of impeachment in the House of Representatives,

applies only to the officers mentioned in Art. 196. Article 93 is as follows: "The judges of all courts shall be liable to impeachment for crimes and misdemeanors. For any reasonable cause the Governor shall remove any of them on the address of two-thirds of the members elected to each house of the General Assembly. In every case the cause or causes for which such removal may be required shall be stated at length in the address and inserted in the journal of each house."

There is a clear distinction between Arts. 196 and 93. If it had been intended that all judges should be impeached by the House of Representatives the Art. 196 would have said so, and Art. 93 would have been unnecessary. The impeachment mentioned in Art. 93 is not vested in the House of Representatives, and it was competent for the General Assembly to lodge it elsewhere. In all matters not prohibited by the Constitution the General Assembly is supreme.

If the Constitution had said that the City Council could impeach the recorder for high crimes and misdemeanors there would be an end of the controversy. The Constitution not having forbidden the delegation of this power either directly or by implication, the General Assembly in the exercise of its supreme authority could vest it in the City Council of New Orleans. That Article 93 contemplated in the case of recorders a delegation of this power to the City of New Orleans is very plain from the text of Art. 198. It is significant that in this article, instead of using the word Governor or executive the words "appointing power" are employed.

The article says: "All officers against whom articles of impeachment may be preferred shall be suspended from the exercise of the functions of their office during the pendency of such impeachment, and except in case of the impeachment of the Governor the appointing power shall make a provisional appointment to replace any suspended officer until the decision of the impeachment."

That this article applies also to another "appointing power" than the Governor or executive who issues commissions for original vacancies or to elected officers is very clear because of the omission of the words Governor or executive, and the delegation by Art. 253 of the Constitution to the citizens of New Orleans of the right of appointing the several public officers necessary for the administration of the police of said City. The recorder is a necessary officer for such purposes, and the Art. 93 seems specially to have been

framed for the purpose of allowing the City Council, by permission of the General Assembly, to impeach for high crimes and misdemeanors the recorders of the City of New Orleans. State *ex rel.* Behan vs. Judge, 35 An. 1075.

In my opinion any offence embraced in the description of Art. 196 of the Constitution, which is not a crime or misdemeanor, must be, for the removal of the recorders, prosecuted according to Art. 201.

I concur in the decree.

## DISSENTING OPINION.

MILLER, J.   My examination has brought me to a conclusion different from that reached by the majority of the court in this case.

The question is whether the relator, the Recorder of the First Recorder's Court of the City of New Orleans, to which he was duly elected under the law creating it, can be removed by the order of the Mayor of the City, and under color of impeachment proceedings of the City Council.   The Constitution of the State, under the rubric " Impeachment and removals from office," provides that district attorneys, clerks of court, sheriffs, coroners, recorders, justices of the peace, and all other parish, municipal and ward officers, shall be removed by judgment of the District Court of the domicile of such officer, specifies the mode of procedure and court, and designates the Civil District Court of the Parish of Orleans as the tribunal for all removal proceedings against officials filling offices in this Parish.   Other articles under the same rubric deal with the impeachment and removal from office of the Governor and other constitutional officers of the executive department.   The removal of the judges is provided for in another article, and there is found the provisions for the removal of recorders.   (Const., Arts. 196 *et seq.*, 201.)   The article expressly mentions his office; and to make the scope of the provision more emphatic, declares that all other parish, municipal and ward officers are intended to be embraced.   The Constitution uses the term "impeachment" only with reference to the Governor and other heads of the executive department.   In dealing with the judges and municipal officers the words " shall be removed " are used.   While impeachment has 'a larger significance than removal, it certainly includes removal from office.   The Constitution specifies the causes for impeachment and

removals, and embracing every conceivable cause, thus: High crimes and misdemeanors, non-feasance or malfeasance in office, incompetency, corruption, favoritism, extortion or oppression in office, gross misconduct or habitual drunkenness. With this enumeration of causes, and of *all* the executive, judicial, parish, ward and municipal offices, the Constitution confides the impeachment and removal power to the Senate and House in respect to the Governor and chief executive officers, and to the courts is entrusted the removal of the judicial and parish and municipal officers. It seems to me the Constitution manifests plainly that the whole power of impeachment and removal from office was to be exerted solely by the instrumentality specified in the Constitution. There is plainly exhibited the appreciation that the power was judicial in its nature. Following the precedent of the Constitution of the United States, it clothed the House of Representatives with the function of preferring articles of impeachment of the higher State officers, and their trial is to be by the Senate, vested for that purpose with judicial powers, the highest judicial officer of the State, the Chief Justice, presiding. In respect to judicial and other officers, including recorders and *all* municipal officers, the courts are designated to exert the power of removal. It is, in my opinion, useless to discuss whether the power of removal of officers like recorders, on general principles, pertains at all to the City Council. All will recognize that it was for the framers of the Constitution to determine whether the grave power of removal from office, carrying with it the stain on character necessarily implied, should be vested in a body like the City Council, or reposed in that department of the government better qualified, from its structure and modes of proceeding, to deal with such questions. In my view, the Constitution expresses in the clearest language that the power of removal is not in the City Council, but in the courts. The opinion of the majority of this court affirms that notwithstanding the constitutional provisions on this subject, the power to remove the incumbent of the office of recorder, created by legislative act, is in the City Council. Const., Arts. 196, 201; Act No. 20 of 1882, Secs. 30, 58 *et seq.*

I can not appreciate the argument that there can be an impeachment or removal power in the courts by virtue of the Constitution, and the same power, whether called impeachment or removal, and for precisely the same causes as are prescribed by the Constitution,

vested in the City Council. I see no purpose in the Constitution to leave that power to be exerted by the courts or by the council. No such view, it is reasonable to suppose, ever occurred to the framers of the Constitution. When the organic law confided the power to the courts, in any reasonable construction it must be deemed to have intended the exclusion of any other instrumentality. Nor can I see the force of the argument that, because the recorders as now constituted are named in the City Charter of 1882, that therefore the Constitution framed in 1879 has no application to recorders. The Constitution announced a policy for the future as well as the present. It refers specifically to recorders known to the law since 1805 as exerting judicial functions in this city. The constitutional provisions in Art. 201 applied to the office of recorder as then existing, and to the same office thereafter modified or created by subsequent legislation. As soon as the act of 1882 was passed the Constitution applied itself to the office of recorder named in that act, and fixed for all time as long as the Constitution should endure the power of removal in the courts. No refinement of language nor of meaning can take recorders out of the scope of Art. 201. If the mode of removing recorders is not prescribed by that article, with equal reason it might be said sheriffs or coroners are not embraced. Recorders, sheriffs and coroners are named and *ex industria*, "all municipal and parish officers," is added. The contention then admits consistently of no support that the Constitution does not provide for the removal of recorders. Is it now to be maintained that consistently with the constitutional provisions the Legislature could by the Act of 1882 provide another method of removal? Least of all, can I understand that the decision in the Behan case (35 An. 1075) controls the question here. It is familiar that courts never enjoin legislative bodies. The Behan case was an injunction to restrain the council from continuing pending impeachment proceedings against the City Treasurer. The issue was simply and only whether such injunction could issue. That determination disposed of the controversy. All the reasoning of the court was limited in legal effect to the point presented. The impeachment was never consummated. How then can it be affirmed that the court in that case determined the grave question here presented whether the impeachment is not exclusive in the courts? While the court in that case used language tending to affirm an impeachment power in the council, the reason-

.ing can not by any canon of construction be accepted as a decision of the issue here. Indeed, the view of the court in the Behan case seems to be announced thus:

"We are therefore clear in our conviction that in this case the District Court has wrongfully exceeded the bounds of its jurisdiction, and that the proper and only efficient check is by the writ of pro-hibition. This view of the controversy obviates the necessity of passing on the alleged unconstitutionality of the City Charter on the subject of impeachment, which will be disposed of whenever it comes up in a proper proceeding."

This is no case of an injunction to stay proceedings of the council. Right or wrong the council proceeds. But the case calls on this court to determine whether the relator can be deprived of his office and emoluments by virtue of the council proceedings. While courts never interfere with the proceedings of legislative bodies, it is the undoubted judicial function to determine the effect of such proceed-ings when they affect the rights of parties, and to protect such rights. That is the function this court is called to exercise. In its exercise the court must decide whether the removal power exists in any de-partment but the courts, and in my opinion the question admits only of one answer, which finds apt expression in this language of the late Chief Justice:

" It is an axiomatic proposition that a Legislature is powerless to act where the Constitution has spoken and has left no room for its action. Hence, when a Constitution has provided for the qualifica-tion of certain officers, for their removal for certain causes, by cer-tain authorities, and in a certain way, a Legislature is incompetent to prescribe, as to those same officers, for different qualifications, different causes of removal, different authorities or different ways. It can neither add nor take from the constitutional provisions on those subjects, which must remain untouched and enforced as writ-ten."

I think, too, that the previous adjudications of this court support the exclusiveness of the methods of removal prescribed by the Con-stitution. 34 An. 273; 35 An. 993.

In my opinion the relator is entitled to the relief he seeks.