No. 12,890.

STATE OF LOUISIANA EX REL. HENRY BEZOU, RECORDER, VS. JUDGE OF THE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, DIVISION A.

50 655
51 1104

The office of Recorder, under the Constitution of 1879, was not a constitutional office. 46 An. 830.

The existing Constitution, as to those Recorders now in office, is not retrospective.

The statutory office of Recorder, under the Constitution of 1879, as to those previously elected to that office, continue to be a statutory office under the existing Constitution.

State ex rel. Recorder vs. Judge.

The authority of the municipal council to organize a tribunal to try the issues
raised continues as it was prior to the existing Constitution.

ON APPLICATION for a Writ of *Mandamus* and Prohibition.

*E. Howard McCaleb*, *Albert Voorhies* and *F. D. Chretien* for Relator;
Respondent Judge *pro se*.

*Samuel L. Gilmore*, City Attorney, and *Walter B. Sommerville*,
Assistant City Attorney, for City of New Orleans *et als.*, Respondents.

Submitted on briefs June 25, 1898.
Opinion handed down June 28, 1898.
Rehearing refused July 8, 1898.

APPLICATION FOR WRITS OF MANDAMUS AND CERTIORARI.

The opinion of the court was delivered by

BREAUX, J. Relator, who is the recorder of the Second Recorder's
Court of the city of New Orleans, complains of the refusal of the
Judge of the Civil District Court to grant him the injunction for
which he applied. The City Council, with a view to his trial upon
charges of inability to properly discharge the functions of his office,
have taken steps against him.

He (relator) called in question the authority of the council to
hear and decide these charges. He sued for an injunction.

His purpose in applying for the injunction was to prevent the
council from taking jurisdiction of the case.

The Judge of the District Court, respondent here, after having
heard counsel in behalf of petitioner and of the city, refused to
grant the injunction.

Relator thereupon addressed a petition to this court for a writ of
*mandamus* to compel the District Judge to issue an injunction,
directed to the mayor and members of the City Council.

Upon his application for a writ of *mandamus* a rule *nisi* was issued
by this court. In this court, in support of his application for a
*mandamus*, relator contends that, under the Constitution of 1898, he
is a constitutional officer who may be removed for cause by a judg-
ment of the District Court under Art. 222 of the Constitution; but
that the City Council is not vested with any such power.

Similar questions arose under the Constitution which preceded our organic law, recently adopted and now in force. At first, under that Constitution an extreme position was taken. It was contended at bar that a court of impeachment of the City Council of New Orleans, organized to pass upon charges preferred against one of the officers of the municipality, was not a legal body. That the proceedings of such a court would be an invasion upon the functions of the judiciary, to whom was specially delegated the power to determine all judical questions.

This court held in the case cited *infra* that the power of trial of municipal officers by the municipal council was not, in character, judicial, but that it was a power essential to the proper administration of municipal affairs—one necessary to good order and useful local government.

In the case to which we refer it declined to issue an injunction and arrest the action of the municipal council and held that an injunction restraining the council would be an interference with its functions.

The court gave expression to a decided unwillingness to interpose its authority prior to a hearing, or the least exercise of municipal discretion in the case. *Non constat* the court said, in substance, that there would be any resulting injury; that the legality or constitutionality of its action would be within judicial control under proper showing. State *ex rel.* Behan vs. Judges, 35 An. 1081.

The question was before this court a second time in another case which received our patient attention and consideration.

The point raised was: the Constitution having provided for the removal by the courts of designated officers for causes set forth, the Legislature was without power, because of the constitutional limitation, to prescribe other mode of removal by other authority. In other words, that the jurisdiction expressed in the Constitution operated upon the Legislature as a limitation of power.

This court took an opposite view of the question and held that the convention, in adopting Art. 201 of the Constitution of 1879, evidently intended to establish special and additional, and not an exclusive method of removal; that both the court trial and the impeachment trial as provided could stand together. That they were different in origin of the power and the character of the proceedings, as well as the penalty and its effects. The court also held that the recorders' courts were part of the local or municipal

42

government, and as such ·they were statute courts. State *ex rel.* Whitaker vs. Adams, 46 An. 830, 848.

We pass to a consideration of the similarity (or the asserted dissimilarity—counsel in behalf of relator contend) there is between the existing organic law and the Constitution it repealed.

Counsel for relator urged that, by reason of the change and ·differ-·ence between the two instruments, the recorder selected to fill a statutory office has been, by the Constitution, promoted to a constitutional office.

It is first principle; Constitution and laws, as relates to their ·effect, look to the future. They operate prospectively, save where the words employed make it manifest that it was the intention to give them a retrospective effect. Cooley on Constitutional Limitations, p. 76.

The words employed in the Constitution expressly relate to the future, as to the recorders of the city of New Orleans, who were in office at the date of the adoption of the Constitution. They (it is ordained) are to continue in the exercise of their functions and jurisdiction conformably to existing laws. Art. 122 of the Constitution of 1898.

As relates to " existing laws," the office was statutory under the Constitution of 1879; it is statutory under the existing Constitution; at least, as concerns those now in office.

We have grave doubts, considered *in prospectu*—*i. e.*, as relates to those who will hereafter qualify and fill the office under the existing Constitution—as to the intention of the Convention to make it (the recorder's office) a constitutional office. We are quite confident, however, as to those now in office, that the legislation of the Convention did not mean it to operate retrospectively.

At the date the Convention opened its deliberations we had all accustomed ourselves to look upon the decision last cited as settling the question before us for decision. Had it been the intention of the Convention that it should have a retrospective effect, the words employed would clearly show the purpose of promoting those in office as recorders to a constitutional office. Instead, the affirmative words of the instrument, save as relates to jurisdiction, are that they shall, under the law, remain as they are. The law under which the relator is called upon to respond to charges before an authority of the municipality was on the statute book when he was elected. It had been sustained

by this court's interpretation. He has less cause to complain than those who will hereafter be elected or appointed under the existing Constitution, who will come under the new order of things without having accepted the benefit of the old.

After all, it is a question of a tribunal to hear the charges preferred and decide whether or not they are sustained. The questions are not complicated, and it is perhaps advisable that trial be had.

Not long since, relator, an elderly man, was elected. Age, its infirmities and sickness are the only complaints made.

We are confident, before any tribunal of this State, temporary or permanent, every consideration and respect due to age will be shown, and that removal will follow the hearing only in case it is very evident that the relator is no longer equal to the task devolving upon a recorder. We, in the matter before us, dealt only with the cold letter of the law. It, and the precedents to which we have referred, left us only one alternative; that was to decline to grant relator's demand.

It is ordered, adjudged and decreed that relator's demand be rejected, and our rule *nisi* issued upon his application be discharged.