## STATE *ex rel.* BURNS v. LINN, *District Judge.*

No. 7880.   Opinion Filed December 14, 1915.

(153 Pac. 826.)

1. **MUNICIPAL CORPORATIONS—Charter—State Laws Superseded.** The provisions of the charter of the city of Tulsa, adopted under the authority of section 3a, art. 18, of the Constitution (section 329, Williams' Ann. Const.), and section 539, Rev. Laws 1910, supersede all laws of this state in conflict with such charter provisions, in so far as such laws relate to merely municipal matters.

2. **SAME—Charter—Operation—State Laws.** Such charter provisions do not supersede the general laws of the state of general concern, in which the state has a sovereign interest, and where the provisions of said charter conflict with the general laws of the state of this character, such laws will prevail.

3. **SAME—Suppression of Vice—State Interest.** The state has a sovereign interest in the enforcement of its general laws against the traffic in intoxicating liquors, against gambling and prostitution, within the territorial limits of the city of Tulsa.

4. **SAME—Officers—Duties Imposed by State—Enforcement of State Laws.** The state may impose upon the local officers of the city of Tulsa specific duties in the matter of the enforcement of the laws of the state having force and effect within the city, and may provide penalties for failure to discharge such duties, and in respect to the duties so imposed the municipality and its officers are the agents of the state, and subject to its command and control at all times.

5. **SAME—Removal of Officers—Jurisdiction.** The provisions in the charter of the city of Tulsa for the removal of the chief of police of such city are not exclusive, but such authority is cumulative to and concurrent with the jurisdiction vested in the district court by the general laws of the state.

6. **STATUTES—Certainty—Duty to Enforce Laws—Police Officers.** The provisions of chapter 39, as amended by chapters 26 and 133, Session Laws 1913, are not void for uncertainty in respect to the duties therein imposed upon police officers.

(Syllabus by the Court.)

Original action for writ of prohibition by the State, on the relation of Foster N. Burns, against Conn Linn, District Judge. Writ denied, and petition dismissed.

*Pat Malloy, McAdams & Haskell,* and *R. B. Thompson,* for plaintiff.

*S. P. Freeling,* Atty. Gen., and *Smith C. Matson* and *J. H. Miley,* Asst. Attys. Gen., for defendant.

HARDY, J. On November 12, 1915, there was presented to the district court of Tulsa county, by a grand jury duly impaneled therein, an accusation in writing, charging the plaintiff, as chief of police of the city of Tulsa, with habitual and willful neglect of duty and willful maladministration in office, in that he failed and refused to perform the duties expressly enjoined on him in reference to the enforcement of the prohibition laws of this state and the laws with reference to gambling and the keeping of bawdyhouses or the renting or letting of buildings for such purpose, in which accusation it was alleged that the plaintiff had knowingly, willfully, and unlawfully failed, neglected, and refused to enforce the laws mentioned, and had knowingly allowed and permitted violations thereof, both as to violations of the liquor laws and laws against gambling, and that he had likewise allowed and permitted a large number of houses to be let, rented, and operated as bawdyhouses, and had allowed and permitted a large number of women to openly, continuously, and notoriously maintain and operate houses of prostitution in said city, in violation of the law, and had for many months prosecuted a system whereby the keepers of such houses and inmates thereof were compelled to forfeit a bond or pay at intervals a fine to the city of Tulsa, with the implied understanding between

them and the plaintiff that they should receive immunity from arrest and prosecution for a period of about one month from the date of each payment, and that said sums were accepted in reality as a license whereby such persons paying the same were permitted to violate the laws in regard to such violations, and the grand jurors prayed the court for judgment and decree ousting and removing the plaintiff from office, and that pending a hearing thereof plaintiff be suspended until final determination be had.

Plaintiff filed in this court his petition for a writ of prohibition against defendant, as judge of the district court of Tulsa county, prohibiting him from hearing said accusation and from removing him from office in accordance with the prayer thereof. To this petition is attached a copy of the accusation, setting out in detail the various acts alleged against him. The defendant filed a demurrer to the petition, and upon the issues thus joined the matter was submitted to the court.

The question presented is whether, under the provisions of the charter of the city of Tulsa, which contains provisions for the removal from office of various city officials, the jurisdiction of the city is exclusive, or whether, under the general statutes of this state, jurisdiction is vested in the court to entertain that proceeding. The plaintiff contends that the provisions of the charter and the ordinances adopted thereunder, authorizing a removal of the city officers, confer exclusive jurisdiction upon the city, and that such charter provisions and ordinances supersede and displace the general laws of the state in reference to such matters, and that plaintiff, as chief of police of the city of Tulsa, is not amenable to said general laws, nor subject to the jurisdiction of the

district court in the trial of the accusation presented by the grand jury.

The city of Tulsa, under section 3a, art. 18, of the Constitution (Williams' Ann. Const., section 329), duly adopted a charter prepared as therein provided, which was approved by the Governor and became the organic law of the city. By this charter provision was made for the organization, conduct, and control of a system of police and other city officials, and for the removal from office of such officials; and thereafter ordinances were adopted by said city, organizing a police force, providing for the appointment, prescribing the duties, and fixing the salaries of the chief of police and other members of the police force, and regulating the manner of their removal. That it was within the power of the city under its charter provisions to adopt these ordinances is not questioned, and defendant concedes 'that by virtue thereof in matters purely local and municipal the provisions of the charter and ordinances govern. He insists, however, that under the general statutes of this state it was the duty of plaintiff, as chief of police of said city, in addition to his duties under the ordinances of said city, to enforce the general laws of the state referred to, within such city, and that for a failure or neglect thereof he was subject to removal under the general laws of the state.

By section 3631, Rev. Laws 1910, it is made the duty of all police officers to enforce all of the provisions of chapter 39 of said laws, relating to intoxicating liquors, which chapter has been amended by chapters 26 and 133, Sess. Laws 1913, and it is provided that, should any such officer fail or refuse to perform any duty required by the provisions of such chapter, he shall be removed from office as therein provided; and said section authorizes

the filing of a petition in the district court of the county wherein such officer resides, in the name of the state, on the relation of any citizen thereof, upon the recommendation of a grand jury, or on the relation of the board of county commissioners, and the procedure for hearing and determining such proceeding when instituted is set out therein. And it is further provided by section 3633 that all police officers in any city or town, having notice or knowledge of any violation of such chapter, shall notify the county attorney of the fact of such violation, and furnish him the names of persons by whom such violations can be proven, and for a failure or neglect of official duty in that respect such officer may be removed from office, as provided by law. By section 2510 it is made the duty of all police officers to inform against and prosecute all persons whom they believe from credible information to be offenders against the gambling laws of the state, and it is provided that any such officer failing or omitting to do so may be punished by a fine of not exceeding $500, and not less than $50. By sections 2467 and 2469 the keeping of a bawdyhouse, or knowingly letting a building for such purpose, is prohibited, and the punishment prescribed therefor. Section 5592 provides that:

"Any officer not subject to impeachment, elected or appointed to any state, county, township, city, town, or other office, under the laws of the state may, in the manner provided in this article, be removed from office for any of the following causes: First. Habitual or willful neglect of duty. * * * Sixth. Willful maladministration."

Section 5593 provides the manner of removal and authorizes an accusation in writing by the grand jury to the district court of the county in which the officer is elected, and the procedure for the trial thereof is set out

in subsequent sections of said article. By the provisions of section 3a, art. 18, of the Constitution, when a charter has been adopted in the manner therein provided, such charter becomes the organic law of such city and supersedes any existing charter and all amendments thereof, and all ordinances inconsistent therewith. It is provided, however, in the same section that said charter shall not be in conflict with the Constitution and the laws of the state. Section 539, Rev. Laws 1910, which was in force when the charter was adopted, provides that where such charter has been framed, adopted, and approved, when any of its provisions shall be in conflict with any law or laws relating to cities, in force at the time of the adoption and approval thereof, the charter provisions shall prevail, and operate as a repeal or suspension of such law or laws, to the extent of such conflict, and further provides that such charter shall be consistent with and subject to the provisions of the Constitution, and not in conflict therewith, and not in conflict with the laws relating to the exercise of the initiative and referendum and other general laws of the state not relative to cities of the first class.

These constitutional and statutory provisions have been construed by this court in a number of cases, and it has been the uniform holding of the court that the provisions of a charter adopted and approved in accordance with such constitutional and statutory provisions become the organic law of such municipality and supersede the laws of the state in conflict therewith in so far as they attempt to regulate merely municipal matters. *Owen v. Tulsa*, 27 Okla. 264, 111 Pac. 320; *Lackey et al. v. Grant et al.*, 29 Okla. 255, 116 Pac. 913; *Mitchell v. Carter*, 31 Okla. 592, 122 Pac. 691; *Oklahoma Ry. Co. v. Powell*, 33

Okla. 767, 127 Pac. 1080; *In re Simmons*, 4 Okla. Cr. 662, 112 Pac. 951. And it has been further held that such charter provisions, where they conflict with the general laws of the state, must give way, and, while they may run current with the general laws of the state, they may not run counter thereto. *Board of Education et al. v. Best,* 26 Okla. 366, 109 Pac. 563; *State v. Cummings,* 47 Okla. 44, 147 Pac. 161.

The charter of the city of Tulsa was under consideration by this court in the case of *Owen v. Tulsa, supra,* and by the Criminal Court of Appeals in *Re Simmons, supra,* and it was held in each case that the provisions of said charter did not supersede the general laws of the state not relating to cities. This being the construction placed upon these provisions and upon the Tulsa city charter, it then becomes necessary to determine whether the laws with reference to intoxicating liquors and gambling and prostitution above set out are matters that are merely municipal in their nature, or whether they are such matters as are of concern to the state at large, and in which the state has a sovereign interest for the benefit of the people of the state generally. The history of the prohibition laws of this state is well known, and it is only necessary to make a brief reference thereto. One of the terms of the Enabling Act required that the state, as one of the conditions of statehood, should prohibit the manufacture, sale, barter, giving away, or otherwise furnishing intoxicating liquors, except as therein authorized, within that part of the state then known as the Indian Territory, and also the Osage Indian reservation and all other parts of the state which existed as Indian reservations on the 1st day of January, 1906, for a period of 21 years from the date of the admission of the

state into the Union. In accordance with this require-
ment, at the time the proposed Constitution was voted
upon, a separate prohibition article was submitted to the
people, which was adopted, and has ever since been a
part of the organic law of this state. The laws against
gambling and prostitution are general, and intended to
operate throughout the entire state, and such statutes are
police regulations necessary for the maintenance of the
public peace and the good order of society, and are mat-
ters in which every citizen of the state has an interest,
and are not local and confined to the municipality of
Tulsa, to be regulated by its charter provisions and ordi-
nances to the exclusion of the general laws of the state
upon the subject. In *Thurston v. Caldwell,* 40 Okla. 206,
137 Pac. 683, the present Chief Justice, in discussing a
similar question then under consideration, said:

"But even those who press this view most extremely
acknowledge the absolute supremacy of the Legislature
in many matters of chiefly local interest, in which, never-
theless, the state has a sovereign interest, among which
may be mentioned state control over local police pro-
tection. * * * "

See, also, *In re E. B. Ambler,* 12 Okla. Cr. 449,
148 Pac. 1061.

In *Lackey v. Grant, supra,* this court approved and
followed the rule in Missouri, construing a similar pro-
vision in the Constitution of that state (section 16, art.
9), authorizing cities of more than 100,000 inhabitants
to frame charters for their local government, consistent
with and subject to the Constitution and laws of that
state. The Missouri court holds that a charter adopted
by a city under the authority of the constitutional pro-
vision mentioned superseded the statutes of the state,

where they conflicted as to purely municipal regulations. *Kansas City v. Marsh Oil Co.*, 140 Mo. 458, 41 S. W. 943; *Brunn v. Kansas City*, 216 Mo. 108, 115 S. W. 446. But where such provisions conflict with the general laws of the state in matters where the state has a sovereign interest, or affect matters of general concern, the state laws control. *State v. Police Com'rs*, 184 Mo. 109, 71 S. W. 215, 88 S. W. 27. The Legislature passed laws creating a board of police commissioners for the city of St. Louis, and in discussing such laws, in *State v. Mason*, 153 Mo. 23, 54 S. W. 524, the court said:

"Laws like these and those of other states providing a metropolitan police system for large cities are based upon the elementary proposition that the protection of life, liberty, and property and the preservation of the public peace and order in every part, division, and subdivision of the state, is a governmental duty which devolves upon the state, and not upon its municipalities, any farther than the state in its sovereignty may see fit to impose upon or delegate it to the municipalities. The right to establish the peace and order of society is an inherent attribute of government, whatever its form, and is coextensive with the geographical limits thereof, and touching every part of its territory."

The Minnesota decisions are in harmony with the rule in Missouri, and in the case of *State v. Robinson*, 101 Minn. 277, 112 N. W. 269, 208 L. R. A. (N. S.) 1127, the court, after discussing the relative powers of a city under a charter form of government and of the state for handling various matters of purely municipal concern, with which the state did not concern itself, said:

"But in so far as the general laws of the state operate and have force and effect within the municipality, and the officers thereof are charged with their enforcement, the municipality and its officers are the agents, and sub-

ject to the command and control, of the state government at all times.  The Legislature may impose upon the local officers specific duties in the matter of the enforcement of the laws' of the state and prescribe penalties for a failure to perform the same.  Indeed, the efficient administration of the law, adopted for the welfare of the state at large, renders it imperative that the state, as guardian for the people as a whole, should possess and exercise this  *  *  *  control.  Its absence would lead to a failure of law enforcement, so essential to the good order of society and the protection of property and property rights.  That the state, when creating a municipal subdivision for local self-government, retains this general supervisory control over the affairs thereof, except so far as expressly or by fair implication surrendered, there can be no serious question."

The general rule, in the absence of special constitutional provision, is that all officers whose duties pertain to the exercise of the police power of the state are in that sense state officers, and under the control of the Legislature, even though they may be officers of a municipality and charged with the enforcement of the local police regulations of such municipality.  28 Cyc. 296. Counsel at the bar in oral argument of this case declined to discuss the question as to whether the enforcement of the prohibition and gambling laws and laws against prostitution were purely municipal, or whether they affected the state at large, taking the position that the sole question for our determination was one of jurisdiction, being whether the general laws of the state enacted for the removal of delinquent police officers are valid and operate within the territorial limits of the city of Tulsa, or whether the provisions of the charter and ordinances are exclusive.  We have already shown that it is within the power of the state to enact laws for the police protection of its citizens, which laws shall be effective

throughout the state and all of its subdivisions, and coextensive in their operation with the territorial limits of the state, and that such laws would be effective in the city of Tulsa, and the provisions of the charter and ordinances of said city could not operate as a repeal thereof. It is true that the city might enact ordinances, not inconsistent with the state laws, regulating such matters within its territorial limits, and make suitable provisions for the enforcement thereof, and provide for the removal of officers charged with the duty of enforcing such regulations who should fail in the discharge of that duty. This does not mean, however, that the state has completely abdicated all authority in the premises and delegated full and unrestricted control over such matters to the local officials. If the contention of plaintiff be admitted, it destroys the uniformity and efficiency of the police power of the state, leaves these matters subject to the sole management of the local authorities, and would permit a condition to exist in a city with such charter entirely different from and at variance with the conditions in other parts of the state; and if the officers of a city which has adopted a charter are not in sympathy with the enforcement of such laws, or other laws of like character, were the enforcement of said laws left entirely in their hands, it is easy to see that such laws, or indeed any law, might become a dead letter, and their enforcement a farce, and wholesale violations thereof might occur with the knowledge and consent of the city officials.

Neither can we give our consent to the contention that the provisions in the charter for the removal of the city officers is exclusive, and arrests the jurisdiction of the court to hear the accusation presented by the grand jury. While under the provisions of the charter the

petitioner might be removed in accordance therewith by the board of city commissioners, this does not necessarily oust the jurisdiction of the court to proceed in the manner complained of. The authority in the board of commissioners may exist concurrent with the jurisdiction of the court. The proceedings before the board are of an administrative character (*Coffey v. Superior Court,* 147 Cal. 525, 82 Pac. 75), while the procedure in the district court is judicial in its nature, and must be conducted in the manner pointed out in the statute. Such remedies are cumulative and are concurrent, and the court has jurisdiction to hear and determine the accusation presented, notwithstanding the provisions of the charter and ordinances. This question was presented to the Supreme Court of Minnesota in the case of *State v. Robinson, supra,* and that court held that the charter provisions did not oust the jurisdiction of the court to entertain proceedings for the removal of the mayor of the city of St. Cloud. The case of *Coffey v. Superior Court, supra,* involved a like question. The charter of the city of Sacremento made provision for the control of city officers charged with misconduct and for their removal from office. The Penal Code of the state also made provision for the removal of delinquent officers. The court held the charter provisions and the provisions of the general law to be concurrent, that the removal was not purely a municipal affair, and that the superior court had jurisdiction under the general laws, which was consistent and concurrent with the jurisdiction of the city under the provisions of the charter.

Plaintiff cites the case of *Dinan v. Superior Court,* 6 Cal. App. 217, 91 Pac. 806, and *Craig v. Superior Court,* 157 Cal. 481, 108 Pac. 310, holding that charter pro-

visions for the removal of police officers supersede the general law conferring jurisdiction upon the superior court. Both of these were California cases, and were decided after the case of *Coffey v. Superior Court.* After the decision in the Coffey Case the Constitution of California was amended by adding to section 16, article 20, the following proviso:

"Provided, however, that in the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal from office of any such officer or employee shall control."

And section 8½, article 11, of the Constitution of that state expressly provided that it should be competent to make provision in freeholders' charters—

"for the manner in which, the times at which, and the terms for which the members of the boards of police commissioners shall be elected or appointed, and for the constitution, regulation, compensation, and government of such boards and of the municipal police force."

These provisions are not found in our Constitution. Other decisions holding that the power to remove municipal officers vested in the governing bodies of the municipality and that vested by the general laws in the courts are concurrent and are not exclusive the one of the other, are as follows: *Manker v. Faulhaber et al.,* 94 Mo. 430, 6 S. W. 372; *State v. Walbridge,* 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663; *State v. Wells,* 210 Mo. 618, 109 S. W. 758; *State v. Noblesville et al.,* 157 Ind. 31, 60 N. E. 704; *State v. Adams,* 46 La. Ann. 830, 15 South. 490; *State v. Judge Dist. Court,* 50 La. Ann. 655, 23 South. 886.

Plaintiff also relies upon the case of *Hodges v. Tucker,* 25 Idaho, 563, 138 Pac. 1139, decided by the

Supreme Court of Idaho. The case is not in point, for the reason that in section 7459, Rev. Code of Idaho, no provision was contained relating to municipal officers, and the court held that there was no attempt or intention, either expressed or from which a presumption could be entertained, to confer jurisdiction upon the district court to hear and determine a case growing out of a violation of a city ordinance or a neglect of duty to enforce a city ordinance, in cities that had organized and accepted the provisions of the Black Law. The matters complained of in that case were a failure to enforce certain ordinances of Boise City relative to the keeping and maintaining of bawdyhouses. The court further decided that Laws 1911, c. 82, known as the Black Law, indicated an intention upon the part of the Legislature to provide a complete system within itself, in which provision was made for the removal of the officer in question, and that the procedure therein was exclusive.

The case of *Hilzinger v. Gillman,* 56 Wash. 228, 105 Pac. 471, 21 Ann. Cas. 305, decided by the Supreme Court of Washington, was to the effect that the provisions in the charter of the city of Everett for the recall of certain officers was valid and not in conflict with the provisions of the Constitution of that state (article 5, section 3) providing that all officers not liable to impeachment should be subject to removal for misconduct and malfeasance as provided by law.

Counsel contend that section 5592 only applies to officers elected or appointed under the laws of the state, and inasmuch as plaintiff holds office under the city charter, and was not elected or appointed under the state laws, said section has no application, and confers no jurisdiction upon the district court to entertain the proceedings

therein pending. Section 3631 contains complete procedure for the removal of police officers failing to enforce the prohibition laws of the state, independent of section 5592. Section 3633 imposes certain duties upon police officers, and for a failure or neglect of duty in the enforcement of chapter 39 relating to intoxicating liquors authorizes their removal in the manner provided by law. This has reference to the procedure contained in sections 5592 and 5593, authorizing the removal of the officers therein named for the causes and in the manner specified. By the inclusion in its charter of provisions for the removal of its police officers the city might take to itself exclusive jurisdiction for the removal of such officers for neglect of duty in enforcing its local regulations and for causes purely municipal, but by the adoption of such charter could not relieve such officers from the obligation to discharge the duties imposed upon them by the general laws of the state, nor deprive the state of its authority to compel an enforcement of such laws by a removal of the officers charged with the enforcement thereof for neglect or failure in that respect. .

The language of the California court in *Conn v. City Council,* 17 Cal. App. 705, 121 Pac. 714, 719, quoted in *Dunham, City Clerk, v. Ardery,* 43 Okla. 623, 143 Pac. 331, L. R. A. 1915B, 233, to the effect that the tenure of office and method of removing city officials were purely municipal matters, was written by that court after the California Constitution had been amended as hereinbefore indicated and in the light of those constitutional provisions, and was cited by Mr. Justice Riddle, who wrote the opinion of this court in support of the conclusion, reached in that case, that a provision in the charter of the city of Guthrie for the recall of city officials was

valid and was not in conflict with the Constitution and laws of this state.

The holding in *Lackey v. Grant, supra,* that the election of municipal officers was a matter of merely municipal concern, means that the state has delegated to the local municipality regulations of the method of selecting its local officers, but does not intimate that the state may not impose upon police officers such duties as it has in reference to the enforcement of its police regulations prescribed for the protection and maintenance of the public peace and safety, and for a failure to perform such duties may not provide for their removal from office.

The contention is further made that the statutes under which the accusation was presented are void for uncertainty, in that it appears that no specific duties are imposed upon the plaintiff. This contention we think is without merit.

Counsel urge upon us the importance of a correct decision in this case, and view with alarm the far-reaching consequences which they fear will follow a denial of the writ. We are not unmindful of the fact that the question is an important one, and yet it is not new in this state, for in the various decisions of this court heretofore rendered the rule is well established that the provisions of a city charter adopted under the constitutional and statutory authority do not suspend or supersede the general laws of the state relating to matters of general state concern or involving the exercise of the state's sovereignty, and it was specifically decided in *Thurston v. Caldwell, supra,* that the state has a sovereign interest in local police regulation, and certainly the enforcement of

the laws relating to liquor, gambling, and prostitution are matters within the sovereign power of the state, which it has not seen fit, either by the Constitution or the statutes, to completely surrender into the hands of city officials, and the power to enforce obedience to its statutes is necessarily an inherent attribute in the power to enact them, for if it be once conceded that the state may not by proper measures enforce its regulations, the regulations themselves become futile and ineffective, except so far as the sentiment of any particular community may demand that the same be enforced, or so far as the officers thereof may see fit so to do, according to their particular personal views upon the matter. We do not apprehend that any dire consequences will follow a pronouncement upon our part that the state still has the right to compel an enforcement of its wholesome police regulations in each and every part of the state, and that officers may not with impunity neglect the duties imposed upon them by law, at their pleasure.

The demurrer is sustained, the writ is denied, and the petition dismissed.

All the Justices concur.