**WALTON, Mayor, etc., of Oklahoma City, v. DONNELLY, Com'r, etc., of Oklahoma City, et al.**

No. 12265—Opinion Filed June 28, 1921.

Rehearing Denied Oct. 25, 1921.

(Syllabus.)

1. **Municipal Corporations — Charter Provisions Superseding General State Laws.**

The provisions of the charter of Oklahoma City, adopted under the authority of section 3a, art. 18, of the Constitution and section 539, Rev. Laws 1910, supersede all laws of this state in conflict with such charter provisions, in so far as such laws relate to purely municipal matters.

2. **Same — "General State Laws of General Concern."**

Such charter provisions do not supersede the general laws of the state of general concern, in which the state has a sovereign interest, and where the provisions of said charter conflict with the general laws of the state of this character, such laws will prevail.

3. **Same — Official Duties Defined by Charter — Power of Commissioners to Transfer Duties.**

Where an officer is created by city charter and the duties thereof are defined by that instrument, it is not within the power of the commissioners to transfer such duties to another office unless there is some specific provision in the charter authorizing such a transfer.

4. **Statutes—City Charters—Constitutions—Construction—Intent.**

In the construction of constitutions, statutes, and city charters, the intent of the lawmakers, when ascertained, must govern.

5. **Same—Construction of Statutes—Rule of Ejusdem Generis.**

General words in a statute must receive a general construction, unless there is something in it to restrain them, but in accordance with what is commonly known as the rule of ejusdem generis, where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class, or nature as those specifically enumerated. Unless there is a clear manifestation of a contrary purpose.

6. **Same—Uniform Meaning of Term Used in Different Parts of Statute.**

Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, this meaning will be attached to it elsewhere, unless it clearly appears from the whole statute that it was the intention of the Legislature to use it in a different sense.

7. **Same—General Words Following Particular Terms.**

General words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms.

8. **Same — Ambiguity — Reasonable Construction.**

If there is doubt or ambiguity in a statute, it is the duty of a court in interpreting the same to give it the most reasonable and just interpretation as the legislative intent, rather than an interpretation unreasonable, unjust, or one that will lead to an absurdity.

9. **Municipal Corporations — Charter Provisions—Power of Commissioners to Transfer Mayor's Prescribed Duties.**

Section 11, art. 2, of the charter deals with the transfer of duties not elsewhere specifically named in the charter, and does not empower the board of commissioners, by a vote of four out of five commissioners, to transfer the powers specifically granted to the mayor by section 6, art. 2, of the charter, of having charge of the department of public affairs, which includes the police department, city jail, etc., to some other department.

10. **Same—Validity of Transfer—Injunction by Mayor.**

The mayor of Oklahoma City, who is made the chief executive thereof, and whose duty it is, by virtue of the charter and the statute of the state, to see that all laws of the state and ordinances of the city are observed within the city limits, must necessarily possess control and supervision over the police department and city jail. Held, a motion adopted by four votes of the commissioners of said city whereby they take from the mayor all control over the police department and city jail, and attempt to assign said duties to the control of some other office or department, is void; and held, further, injunction will lie on behalf of the mayor against the commissioners or commissioner from exercising control over the police department and city jail by virtue of said void proceedings.

Error from District Court, Oklahoma County; Frank Mathews, Assigned Judge.

Injunction by J. C. Walton, Mayor and Commissioner of Public Affairs of Oklahoma City, against Mike Donnelly, Commissioner of Finance and Accounting of Oklahoma City and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Bayard T. Hainer and D. S. Levy, for plaintiff in error.

McAdams & Brady, Wright, Blinn & Gilmer, and Morgan & Deupree, for defendants in error.

Giddings & Giddings, amici curiae.

McNEILL, J. The question for determination in this case is whether the commissioners of Oklahoma City, by a motion receiving the vote of four of the commissioners, can transfer the supervision and control of the police department and the city jail from the mayor. Oklahoma City has a commission form of government and is operated under a charter framed and adopted as provided by section 3-a, art. 18, of the Constitution of the state. The charter provides for the election of five commissioners, who shall serve four years, and said charter assigns certain duties and departments to each commissioner. The instant case deals only with the duties of the mayor, who is commissioner of public affairs, and we will refer only to the sections of the charter applicable thereto.

Section 1, art. 2, provides:

"The elective officers of this city shall be five commissioners, i. e. the mayor, who is commissioner of public affairs; the commissioner of public safety, commissioner of accounting and finance, the commissioner of public works, and the commissioner of public property," etc.

Section 4, art. 2, provides as follows:

"The mayor, as such, shall be the chief executive officer of the city, and he shall see that the laws are enforced. In addition to other duties imposed upon him by the state and municipal laws, and the board of commissioners, he shall sign the commissions of all appointive officers," etc.

Section 6, art. 2, provides as follows:

"Commissioner of Public Affairs—The commissioner of public affairs shall be superintendent of and have charge of the department of public affairs, which shall include the police department, municipal counselor and assistant, municipal judge, city jail, and relation of the city to other municipalities."

The charter, under the Constitution and statutes of this state, becomes the organic law of the city, and in addition to creating the offices of the five commissioners, and assigning them their duties, gives to the commissioners certain legislative powers.

On April 12, 1921, at a meeting of the commissioners it was moved by one commissioner and seconded by another that the police department and city jail, which are under the supervision of the mayor, who as we have seen should have charge of the police department and city jail under the charter, be assigned and transferred to the commissioner of accounting and finance, who should thereafter supervise and have charge of the police department and city jail, and said transfer to take effect from date, four

commissioners voting in the affirmative and the mayor voting in the negative. The petition in this case sets out all of the different provisions of the city charter stated above and alleges that immediately after the passage of the motion above the commissioner of accounting and finance attempted to exercise supervision over the police department and the city jail. It is contended the action of the commissioners in transferring the supervision and charge of the police department from the mayor is void and in violation of sections 4 and 6, art. 2, of the city charter. The mayor, by his petition, asks to have the commissioner of finance and accounting enjoined from interfering with him in the performance of the duties assigned to him under the charter.

To the petition, the commissioner of accounting and finance filed a demurrer, which was sustained by the trial court. The mayor elected to stand upon the petition and refused to plead further, and the court dismissed the case, and from said judgment an appeal has been prosecuted to this court.

The only question involved is the force and effect of the motion, and its validity. Second, whether injunction is the proper remedy.

It has been the uniform holding of this court that city charters become the organic law of the municipality, and supersede the laws of the state in conflict therewith in so far as they attempt to regulate purely municipal matters. See Owen v. Tulsa, 27 Okla. 264, 111 Pac. 320; Lackey v. Grant, 29 Okla. 255, 116 Pac. 913; Mitchell v. Carter, 31 Okla. 592, 122 Pac. 691; Burns v. Linn, 49 Okla. 526, 153 Pac. 826. The Constitution provides that the charter shall not be in conflict with the Constitution and statutes of the state, and it has been further held that such charter provisions, where they conflict with the general laws of the state in matters not purely municipal, must give way, and while they may run concurrently with the general laws of the state, they may not run counter thereto. Burns v. Linn, supra; Board of Education v. Best, 26 Okla. 366, 109 Pac. 563; State v. Cummings, 47 Okla. 44, 147 Pac. 161.

In the case of Kemp v. City of Monett, (Mo. Ct. of App. of St. Louis) 69 S. W. 31, it was said:

"A 'charter' is the municipal organic law, which no ordinance may override."

The courts have uniformly held that where an office is created by the Constitution, and the duties assigned to it by the Constitution, the Legislature has no power to

transfer those duties to some other office. The rule is stated as follows:

"Where an office is created by or imbedded in the Constitution, and the duties thereof are defined by that instrument, or where the office antedated the Constitution, and its duties were eumerated by the statute at the time the Constitution was adopted, or where the office owed its origin to the common law, and had certain well-recognized duties attached thereto, or inherently connected therewith, or forming a substantial part thereof, it was not within the power of the Legislature to transfer such duties to an office of its own creation or to an officer selected and chosen in the manner different from that by which the constitutional officer was named." Trapp v. Cook Construction Co., 24 Okla. 854, 105 Pac. 667; Insurance Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48; Love v. Boyle, 72 Oklahoma, 180 Pac. 705.

This being the settled law in this state, and the charter of the city being the organic law of the city, the commissioners would have no power or authority to transfer from an office created by the charter the duties defined by the charter, unless there is some specific provision in the charter that authorizes such a transfer.

It is contended by the defendants, however, that section 11, art, 2, of the city charter authorizes such a proceeding. Said section is as follows:

"Board may assign duties to other departments.—The board of commissioners shall have the power to assign duties not specifically named above to any department to which they may properly belong, and shall have power by a vote of four out of five commissioners to transfer duties from one commissioner and one department to another commissioner and another department."

The question for consideration is, Did the framers of the charter in this sentence use the word "duties" in the latter part of the sentence to refer to the same "duties" referred to in the first part of the sentence, or did they use it in its broad and unlimited sense and refer to any and all duties? In the determination of this matter the court must be guided by the following proposition, to wit:

"In the construction of constitutions, statutes, and city charters the intent of the lawmakers, when ascertained, must govern." Hudson v. Hopkins, 75 Okla. 260, 183 Pac. 505; De Hasque v. A., T. & S. F. R. Co., 68 Oklahoma, 173 Pac. 73.

In an endeavor to ascertain the intent of the lawmakers, there are certain cardinal rules of construction to be used as an aid in guiding the court in arriving at the inten-

tion of the framers of the charter. One of these rules, as announced in 25 R. C. L. page 996, is as follows:

"General words in a statute must receive a general construction, unless there is something in it to restrain them, but in accordance with what is commonly known as the rule of ejusdem generis, where, in a statute general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose."

This court, in applying the rule of ejusdem generis in the case of Board of County Commissioners v. Grimes, 75 Okla. 219, 182 Pac. 897, in the body of the opinion stated as follows:

"General words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms."

The same rule was announced and applied in the case of Wolfe v. Blackwell Oil Co., 77 Okla. 81, 186 Pac. 484.

Let us apply this rule of construction to this section of the charter. The framers of the charter in the first part of this sentence or section used the term, "power to assign duties not specifically named above to any department to which they may properly belong," and in the latter part of the sentence used the term, "power by a vote of four out of five commissioners to transfer duties from one commissioner and one department to another commissioner and another department." The only controversy is whether the word "duties" in the latter part of the sentence is restricted to the same duties referred to in the preceding part of the sentence, or whether it was used in the latter part of the sentence in a broader sense and referred to any and all duties. If we apply the rule that general words in the same section do not amplify particular terms preceding them, but are themselves restricted by the particular term, then the word "duties" used in the latter part of the sentence is restricted to the same duties referred to in the preceding part of the sentence, unless as stated in R. C. L., supra, there is a clear manifestation of a contrary purpose, and there is nothing in the section to indicate any contrary purpose, nor is there any other provision of the charter that would indicate a contrary purpose. The first part of the sentence refers to the duties the commissioners may assign, and the latter part provides how the commissioners, after once assigning cer-

tain duties, may thereafter transfer those same duties to another department.

In this same connection the rule announced in 36 Cyc. 1132, is stated as follows:

"Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear this meaning will be attached to it elsewhere, unless it clearly appears from the whole statute that it was the intention of the Legislature to use it in different senses."

In 25 R. C. L. page 995, it is stated:

"Where a word susceptible of more than one meaning is repeated in the same act or section of an act (either meaning being in each case open to reasonable adoption), a presumption arises, more or less forcible according to the circumstances, that it is used throughout in the same sense."

In the case of Rhodes v. Weldy (Ohio) 20 N. E. 461, the court said:

"Where the meaning of a word or phrase in a statute is doubtful, but the meaning of the same word or phrase is clear where it is used elsewhere in the same act, or an act to which the provision containing the doubtful word or phrase has reference, the word or phrase in the obscure clause will be held to mean the same thing as in the instances where the meaning is clear."

By the application of the rules just stated, the same conclusion must be reached as when applying the rule of ejusdem generis.

There is another rule of construction that is used as a guide in construction of statutes:

"If there is a doubt or ambiguity in a statute, it is the duty of a court in interpreting the same to give to it the most reasonable and just interpretation as the legislative intent rather than an interpretation unreasonable, unjust, or one that will lead to an absurdity. Ledegar v. Bockoven, 77 Okla. 58, 185 Pac. 1097.

If we consider this section of the statute as ambiguous, and subject to two constructions, let us see the absurdity, if any, it would lead to if given the interpretation contended for by defendants. If the word "duties," as used in the last portion of the sentence, refers to any and all duties and is not restricted in any manner, then the commissioners, by the votes of four of them, have power to transfer all the duties specifically assigned to one commissioner by the charter to some other commissioner, or distribute said duties among the other commissioners, and in this manner deprive one commissioner from having any duties whatever to preform, leaving him with an office and no duties to perform. Could it be said that such was the

intention of the framers of the charter? By this same interpretation four commissioners could by their vote transfer all the duties of their offices to one commissioner, and place upon him and his department all the duties of the city government and leave themselves free to draw their salaries without any duties whatever to perform. The suggestion of such a state of facts seems to us to lead to such an unreasonable construction that no argument is required to answer the same.

It is contended, however, that the rule announced in the case of State ex rel. Owen v. Carter, 77 Okla. 28, 186 Pac. 454, is applicable. We are unable to agree that this rule of law has any application to the facts in the case at bar. The charter created the different offices and assigned certain duties thereto. If the charter contained a provision that said duties shall belong to such department, until otherwise provided by ordinance, or until changed by the commission, then said case might be authority; but no such a provision is contained in the charter. The charter has various sections, assigning to each department certain duties. These are particular enactments of the charter relating to certain duties of each department.

Section 11 does not attempt to assign any duties to any particular department, but the section has for its purpose the vesting of certain power in the commissioners, to wit: First, power to assign any duties not specifically assigned by the charter; second, power to transfer the duties it has assigned, to some other department. Even if we apply the rule announced in the case of Owen v. Carter, supra, to wit:

"Where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment"

—the charter provisions assigning certain duties to each department are particular enactments, and deal only with certain duties. If we concede that the first part of the sentence in section 11 is a particular enactment vesting certain power in the commissioners in relation to duties not specifically assigned, and the latter part of the sentence is a general enactment granting powers to the commissioners to transfer certain duties, and if we say the enactments are in conflict, we are in no better position, for the reason the particular enactment, by applying this rule, must stand, and the general enactment does not apply. But the fallacy of this argument

is that the sections deal with different subjects; the one assigns certain duties to each department, the other section has for its purpose vesting of power in the commission to assign certain duties, and in the same sentence power to transfer duties the commission has assigned.

It is contended, however, that the control of the police department is purely a municipal matter. While we do not think this question is material to a decision in this case, yet this court has held the enforcement of the laws of the state are not purely local or municipal matters, but are matters in which the state has an interest. As was said in the case of State ex rel. Burns v. Linn, 49 Okla. 526, 153 Pac. 826, as follows:

"The state may impose upon the local officers of the city of Tulsa specific duties in the matter of the enforcement of the laws of the state having force and effect within the city, and may provide penalties for failure to discharge such duties, and in respect to the duties so imposed the municipality and its officers are the agents of the state, and subject to its command and control at all times."

In the same opinion, the court stated as follows:

"The state has a sovereign interest in the enforcement of its general laws against the traffic in intoxicating liquors, against gambling and prostitution, within the territorial limits of the city of Tulsa."

While the court in that case referred only to the laws against traffic in intoxicating liquor, gambling, and prositution, as those were laws at issue in that case, yet the state is just as much interested in the enforcement of all other state laws as those enumerated. The state is just as much interested in enforcement of laws against the crimes of murder, burglary, larceny, and various other crimes, as it is the enforcement of laws against the liquor traffic, gambling, and prostitution. Not only are the mayor and police department amenable to the charter provisions for failure to enforce the laws, but they are also amenable to the state for failure to discharge their duties in the enforcement of state laws.

Section 4 of article 2 of the charter provides that the mayor shall see that laws are enforced, and places this duty upon him. Section 566, Rev. Laws 1910, places the same duty upon the mayor. A very similar case arose in Missouri, to wit, Francis v. Blair, (Mo.) I. S. W. 297. The court in the syllabus announced the law as follows:

"The mayor of a city, who is made chief executive officer thereof, and whose duty it

is to see that all laws of the state and ordinances of the city are observed within the city limits, must necessarily possess control and supervision over the police and local constabulary.

"Under such circumstances, a resolution adopted by the board of police commissioners, whereby they take from the mayor all control over the police force, and assume that control themselves, will be absolutely void".

It is impossible by the aid of any of the rules of construction to give section 11, art. 2, of the charter the construction placed upon it by defendants in error.

It is next suggested that injunction is not the proper remedy. A court of equity will not aid by injunction one who is out of office to secure that office from one who is in the office actually performing its duties under some color of authority. But such is not the fact in the case at bar. The mayor is in office, and claims anthority by virtue of the city charter to perform certain duties. No one is attempting to oust him from office. The commissioner of finance and accounting is in possession of his office, and contends, not that he is entitled to the office of mayor, but entitled to perform certain duties by reason of the motion passed by the city commissioners. This court had the identical question before it in the case of Love v. Boyle, supra, and while the court did not state that injunction was the proper remedy, yet the court held the petition did not state a cause of action, and decided the case upon its merits. If injunction is not the proper remedy, then there is no remedy available. As was said in the case of Francis v. Blair, in the body of the opinion:

"It is contended that injunction will not lie in this case, the plaintiff having a remedy at law. What is that remedy? He cannot institute a quo warranto proceeding, because the right of defendants respectively to the office of police commissioner is not controverted. Quo warranto is resorted to for the purpose of testing the civil right by trying the title to an office or franchise, and ousting the wrongful possessor. High, Extr. Leg. Rem. 603. He cannot have a writ of prohibition, because that is 'an extraordinary writ, issuing out of a court of superior jurisdiction, and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested.' * * * If injunction will not lie, the plaintiff has no remedy whatever. He has, neither as an individual nor an officer, sustained any injury not common to the entire community, nor any special damage for which he may sue and recover judgment. The result of the argument against the remedy sought by plaintiff would be, if sustained, to strip the mayor of the executive power conferred upon him by the law,

and render him powerless to discharge the grave and responsible duties imposed upon him by the law of the land. If he has the right, the law will afford a remedy to enforce that right, and any remedy adequate to accomplish the end known to the law may be resorted to."

Cases, although not identical, somewhat similar are the cases of Brady v. Sweetland, 13 Kan. 41; Armijo v. Baca, 3 N. Mex. 490, 6 Pac. 938; Guillotte v. Poincy (La.) 6 South. 507; Wheeler v. Board of Fire Commissioners (La.) 15 South. 179; Goldman v. Gillespie (La.) 8 South. 880; Ewing v. Thompson, 43 Pa. St. 372; Kerr v. Trego, 47 Pa. St. 292; and Ehlinger v. Rankin (Tex. Civ. App.) 29 S. W. 240.

We therefore conclude that the transferring of the duties from the mayor by motion upon vote of four commissioners was absolutely void, and without authority, and it was error for the trial court to sustain a demurrer to the petition.

For the reasons stated, the judgment of the trial court is reversed, and remanded, with instructions to overrule the demurrer and to take such further proceedings as are not inconsistent with the views herein expressed.

HARRISON, C. J., and PITCHFORD. KANE, JOHNSON, ELTING, and NICHOLSON, JJ., concur. MILLER and KENNAMER, JJ., dissent.

———

KENNAMER, J. (dissenting). I dissent from the interpretation of section 11, art. 2, of the city charter of Oklahoma City, as sanctioned by majority of the Justices of this court in the majority opinion, and on account of the interest manifested in the questions involved and the importance of the same to the public I have concluded to give the reasons for my dissent.

Under section 1, art. 2, of the city charter of Oklahoma City, which was adopted and approved under the authority of section 3-a, art. 17, of the Constitution, Oklahoma City has a commission form of government, and the governmental powers of the city are vested in five elective officers, designated as city commissioners, being the mayor, commissioner of public affairs, commissioner of public safety, commissioner of finance and accounting, commissioner of public works, and the commissioner of public property. In sections 4, 6, 7, 8, 9, and 10 of

article 2, certain duties are assigned to the respective commissioners, and following the assignment of certain duties to the respective commissioners section 11 of article 2 of said charter provides:

"Board May Assign Duties to Other Departments. The board of commissioners shall have the power to assign duties not specifically named above to any department to which they may properly belong, and shall have power by a vote of four out of five commissioners to transfer duties from one commissioner and one department to another commissioner and another department."

I believe that the freeholders, who drafted section 11, art. 2, of the charter, supra, in plain and unmistakable language said just what they intended to say and meant just what they said, and the majority opinion of the court has overlooked a sound and fundamental rule of construction of statutes and constitutions, and that is, that words in a statute, or any kind of written instrument, should be construed according to their ordinary sense and the meaning commonly attributed to them, unless such construction will defeat the manifest intention of the Legislature or the parties to the contract. In 25 R. C. L. par. 234, page 988, the rule will be found as follows:

"It is well settled that, in construing any statute, all the language shall be considered, and such interpretation placed upon any word or phrase appearing therein as was within the manifest intent of the body which enacted the law. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context and promotes in the fullest manner the policy and objects of the Legislature, and the various rules and principles of interpretation hereinafter discussed are resorted to only as an aid to the courts in arriving at the true intent of the lawmaker. 'Every technical rule as to the construction or force of particular terms,' said Mr. Justice Story, 'must yield to the clear expression of the paramount will of the Legislature.' As a general rule the words of a statute will be construed in their ordinary sense and with the meaning commonly attributed to them, unless such construction will defeat the manifest intent of the Legislature, and express provision to this effect is found in the statutes of some states. This general rule of construction is applicable not only to civil, but to penal statutes."

This rule is uniformly supported by all of the text-writers and the appellate courts of every state in the Union and the Supreme Court of the United States. The citation

to the decisions supporting this rule may be found in 25 R. C. L. pages 988, 989.

It is true that this is not an invariable rule where giving to the words in a statute or Constitution the construction of their ordinary sense would lead to conclusions which the Legislature did not contemplate, but in the case at bar it cannot be seriously contended that to give the word "duties" its ordinary meaning would lead to a conclusion which the drafters of the charter did not contemplate, but to give it the construction placed upon it that is adhered to by the court in its majority opinion leads to an absurdity and an injustice. If the contention of the plaintiff is correct, under section 11, art. 2, of the charter, three of the commissioners, being a majority, may create new duties and assign the same to any department that they deem proper, but if they decide to transfer these new duties which they have created and assigned, the votes of four commissioners of the five are required to make the transfer; or, according to their contention, it requires one more vote to transfer a duty they have created than it does to create the duty. Such a conclusion is not in harmony with reason, and the fallacy of it is apparent on its face. The same three commissioners voting to create a new duty undoubtedly would have the power to destroy, assign, or transfer the same duty, the creator being vested with authority to deal with his creature.

Counsel for the plaintiff in this cause contended in the oral argument and in their brief filed herein that sec. 14, art. 2, supra, is one single sentence and that the first portion of the sentence specifically provides for the assignment to the proper department of a certain class of duties, to wit, duties not specifically mentioned in the previous sections of the charter, and that the latter part of the sentence provides that the commissioners by a vote of four out of five are vested with authority to transfer duties from one commissioner and department to another commissioner and department, but that section 11 being one single sentence, the duties referred to, which the commissioners are authorized to transfer from one department to another department, have reference only to the duties referred to in the first part of the sentence. A casual reading of section 11, art. 2, will show the error of this contention made by counsel for the plaintiff. Section 11, art. 2, is not one single sentence, but is a compound sentence composed of two simple sentences, and I do not deem it necessary to cite any authority to the effect that section 11, art. 2, is a compound sentence.

The first sentence of section 11, art. 2, in plain language authorizes the board of commissioners to assign duties not specifically mentioned above to any department to which they properly belong. This first simple sentence is plain and there is no room for construction; it means just what it says—that duties not provided for in the charter may be assigned to the departments to which they belong. Then the drafters of the charter, realizing that in a growing and developing city conditions would probably change in some of the departments created, that the duties of the various commissioners might become so burdensome that it would be a matter of physical impossibility for the commissioner of such department to properly and efficiently discharge all of the duties of this department, or that a commissioner might through incompetency, corruption, or a physical disability neglect the duties of his department and thereby retard the efficient administration of the governmental affairs of the city—then by the last sentence of section 11, art. 2, in plain and unmistakable language, the drafters of the charter said, "and should have power by a vote of four out of five commissioners to transfer duties from one commissioner and one department to another commissioner and another department." This is the language of the supreme law of Oklahoma City; it is the voice of the people. The people, speaking through that provision of their supreme law, have said that four of their duly elected and qualified commissioners, exercising their best judgment and discretion in the honest and faithful administration of the governmental powers of Oklahoma City, are vested with power to transfer duties from one commissioner to another commissioner. They had a right to place that provision in their charter law. They did place it in their supreme law, and the wisdom of the people in adopting this provision, viewing the incompetency and inefficiency of many derelict municipal officers, cannot be doubted.

There is a rule of law which was announced by Mr. Chief Justice Marshall, the greatest American jurist that ever occupied a judicial position in this country, which is controlling in a proper determination of this cause and which was not invoked in the opinion by the majority of this court. A statute which is not uncertain or ambiguous, but plain and clear in its terms, is not subject to construction. In the case of the United States v. Wiltberger, 5 U. S. 73, 5 L. Ed. 42, Mr. Chief Justice

Marshall, speaking for the Supreme Court of the United States, said:

"Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of the statute, its language must authorize us to say so."

The rule will be found in 25 R. C. L. par. 213, at page 957:

"Where the language of a statute is plain and unambiguous and its meaning clear and unmistakble, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself."

The Supreme Court of the United States, in the case of Caminetti v. United States, 242 U. S. 485, 61 L. Ed. at pages 452 and 453, speaking through Mr. Justice Day, said:

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. Lake County v. Rollins, 130 U. S. 660, 670, 671, 32 L. Ed. 1060, 1063, 1064, 3 Sup. Ct. Rep. 651; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 33, 39 L. Ed. 601, 610, 15 Sup. Ct. Rep. 508; United States v. Lexington Mill & Elevator Co., 232 U. S. 399, 409, 58 L. Ed. 658, 661, L. R. A. 1915 B, 774, 34 Sup. Ct. Rep. 337; United States v. First Nat. Bank, 234 U. S. 245, 258, 58 L. Ed. 1298, 1303, 34 Sup. Ct. Rep. 846.

"Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion. Hamilton v. Rathbone, 175 U. S. 414, 421, 44 L. Ed. 219, 222, 20 Sup. Ct. Rep. 155."

The people of Oklahoma City have provided in their charter that the duties imposed upon one department or one commissioner may be transferred from one commissioner to another commissioner or department, and the language is plain and simple, and under the rule of law that in such a situation there is no room for construction, supported by the decisions of the appellate courts of every state in the Union and the decisions of the Supreme Court of the United States from the time Chief Justice Marshall abhered to the rule up until the present time, it is obvious that it is a dangerous precedent to depart from a rule so well established. The majority opinion of this

court in the case at bar in holding that the word "duties," as found in the last sentence of section 11, art. 2, of the city charter, has reference only to such duties as are referred to in the first sentence of said section, or duties not specifically provided for in the charter, invokes the rule of ejusdem generis and quotes for authority the rule as announced in 25 R. C. L. p. 996, to wit:

"General words in a statute must receive a general construction, unless there is something in it to restrain them, but in accordance with what is commonly known as the rule of ejusdem generis, where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose."

But upon an examination of the rule as found in this authority it is apparent by reading the additional statement of the rule that the same does not support the contention of the plaintiff in this case, and it is also apparent that the effect of the rule is that where a statute enumerates certain things that the statute is to operate upon and then makes use of the phrases "other things," "others," or "any other," such phrases are commonly restricted to the class or kind of things previously described in the statute.

A continuation of this rule is found in 25 R. C. L., quoted in the majority opinion, at page 997, which is as follows:

"A statute enumerating things inferior cannot, by general words, be construed so as to extend to and embrace those which are superior. In accordance with the rule of ejusdem generis such terms as 'other,' 'other things,' 'others,' or 'any other,' when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described. Thus it has been held that the words 'other erection or inclosure,' employed in a statute defining burglary, must be interpreted as including only things of a similar nature to those already described by the specific words found in the statute. So it has been decided that replevin will not lie for crops severed by the person in possession of the land under claim of title, either at common law or under a statute enabling the owner of the land to maintain replevin for timber, lumber, coal or 'other property,' severed therefrom. And in construing a statute which gives to 'every wife, child, parent, guardian, husband or other person,' a right of action, for injury by reason of the intoxication of any per-

son against the seller of the liquors, since the persons enumerated are persons who stand to him in special relation, it is therefore to be assumed that 'any other person' who may sue must also stand to him in some special relation so as to be injured by his intoxication or by the sale, etc., to him."

It is obvious from the statement just quoted that the rule of ejusdem generis has no application to the case at bar, for nowhere in section 11, art. 2, of the city charter is such a phrase as "others," "any other," "other," or "other things" used, and the decisions of this court in Board of County Commissioners v. Grimes, 75 Okla. 219, 182 Pac. 897, Wolf v. Blackwell Oil Company, 77 Okla. 82, 186 Pac. 484, do not sustain the contention of the plaintiff in this cause, for the reason that the language used in the statutes under construction was similar to the expressions as found in the rule as announced in R. C. L., supra.

At page 998 of 25 R. C. L., the authority says:

"The rule ejusdem generis does not apply where the specific words signify subjects greatly different from one another. And where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all."

In the first sentence of section 11, art. 2, of the charter under consideration, complete provision was made for .the assigning of duties not specifically named in the charter, and the board of commissioners were empowered in the first sentence of said section to dispose of such duties, and if the writers of the charter did not intend to empower the commissioners to transfer duties already provided for in the charter from one department unto another department, the second sentence found in section 11, art. 2, has no meaning at all. The Supreme Court of the United States, in the case of United States v. Simon J. Mescall, 54 L. Ed. 79, speaking through Mr. Justice Brewer, said:

"Counsel for defendant invokes what is sometimes known as Lord Tenderden's rule, —that, where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described —ejusdem generis. * * * But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule, it does not over-

ride all other rules of construction, and it is .never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument. * * * Whilst it is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the genus, there is nothing ejusdem generis left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose. See, also, Gillock v. People, 171 Ill. 307, 49 N. E. 712, and the cases cited in the opinion; Winters v. Duluth, 82 Minn. 127, 84 N. W. 788; Matthews v. Kimball, 70 Ark. 451, 462, 66 S. W. 651, 69 S. W. 547."

And this court, in the case of Kansas City So. Ry. Co. v. Wallace et al., 38 Okla. 233, 132 Pac. 912, speaking through Mr. Justice Dunn, said:

"But in applying this principle of construction, and in determining what things are ejusdem generis, regard must be had to the general subject to which the act relates. Things which plainly belong to the same class when one subject is being considered might belong to an entirely different class when considered with reference to another subject. The rule would be absurd if under the head of 'other' nothing can be included in the construction of the act which is not exactly the same in every particular as the thing specified. * * * Moreover, it has been held upon sound reason that when the particular word or words exhaust a whole genus, the general term will not be regarded as surplusage, but will be construed to refer to a larger class. This must be so, if regard be had to the rule, which is more imperative than the rule ejusdem generis, that a statute is to be considered as a whole, so that, if possible, effect will be given to every part of it."

The courts have uniformly held that the rule ejusdem generis is by no means a rule of universal application and the important use of the rule is to carry out and not defeat the legislative intention, and it never applies when the specific words signify subjects greatly different from one another. Jones v. The State, 104 Ark. 261, 33 Ann. Cas. 302 and note at p. 305.

Applying this to the case at bar, the first sentence found in section 11, art 2, of the charter made provision for duties to be created by the commissioners, and had it been the intent of the drafters of the char-

ter to confine the transfer of duties, as prescribed in the second sentence of section 11, supra, to duties created by the commissioners, it would have been very easy to have qualified the word "duties" by the word "said" or "such", but, on the contrary, it is clear that it was the intention of the framers of the organic law of the city to vest the board of commissioners with discretionary power in meeting emergencies and changing conditions. It has been suggested that if section 11, art. 2, of the charter is construed so as to permit the board of commissioners by a vote of four out of five to transfer duties from one department to another department or from one commissioner to another commissioner, the board of commissioners may entirely take away the duties of a commissioner and leave such commissioner with an office drawing a salary without any duties to perform. Courts will not indulge in the presumption that a majority of the board of commissioners will act corruptly and dishonestly in the discharge of their duties, or that they will abuse the power and discretion vested in them. All tribunals, boards, legislative bodies, and public officers of every description are vested more or less with discretionary powers, but the presumption is that this power will be exercised in the interest of the public.

This case is not before the court invoking the equitable jurisdiction of the court to prevent some inferior tribunal from abusing its discretion. No doubt the petitioner could invoke the equitable jurisdiction of the court to prevent an inferior tribunal from doing him some great injury or wrong for which he is entitled to redress.

It has been suggested that the state has a sovereign interest in the police department of Oklahoma City. The state has a sovereign interest in every citizen in the state. The state has a sovereign interest in every school teacher that teaches the youth of the state, but the state has no interest in what particular superintendents are selected to conduct the different schools of the state; and while the state has an interest in the police department of the various cities of the state to the extent that police officers discharge their duties both to the state and city, the state has no interest whatever in what municipal officers control the police departments or what particular officers control the various city jails of the cities of the state. It is conceded that in purely municipal affairs the charter is the supreme law of the city and must control. Lackey et al. v. State ex rel. Grant, 29 Okla. 255, 116 Pac. 913; Mitchell v. Carter. 31 Okla. 592, 122 Pac. 691:

Dunham, City Clerk, v. Ardery, 43 Okla. 619, 143 Pac.331.Manifestly the distribution of the respective duties of purely municipal affairs is entirely a municipal affair, and the courts hold that the tenure of office and the method of removing and electing city officials are purely municipal affairs. Conn v. City Council of the City of Richmond, 17 Cal. App. 705, 121 Pac. 714; Graham v. Roberts, 200 Mass. 152, 85 N. E. 1009; Hilsinger v. Gillman, 56 Wash. 228, 105 Pac. 471. In this state the question that in purely municipal affairs in cities governed by a charter form of government the Legislature is without power to in any way interfere in governmental matters of purely municipal interest appears to have been settled. In the case of Lackey et al. v. State, supra, this court said, speaking through Mr. Justice Hayes:

"In that event, all that a city could do under the provisions of section 3-a, supra, in the formation of a charter for its own government, would be to adopt in haec verba the general statute. Such a result would render section 3-a nugatory and the exercise of any power it is supposed to grant useless, and result in its effectual repeal by an act of the legislature, without such power having been specifically granted to the Legislature. * * * To the extent that the charter form of government adopted by Oklahoma City provides that the powers granted to the corporation shall be administered by a board of commissioners elected from the city at large, it is in conflict with the statute; but whether the powers of such city are exercised by a mayor and a city council, or by a board of commissioners, is purely a matter of municipal and local concern."

The Supreme Court of Michigan, in the case of People ex rel. LeRoy v. Hurlbut et al., 24 Mich. 44, speaking through Mr. Justice Cooley, said:

"The State may mould local institutions according to its views of policy or expediency; but local government is matter of absolute right; and the state cannot take it away. It would be the boldest mockery to speak of a city as possessing municipal liberty where the state not only shaped its government, but at discretion sent in its own agents to administer it; or to call that system one of constitutional freedom under which it should be equally admissible to allow the people full control in their local affairs, or no control at all."

Many cases have been cited to the effect that where an office is created by a constitutional provision, the Legislature is without power to transfer the duties to some other officer. There is no reason to doubt the soundness of this rule, and the same has no application in the case at bar. It is admitted by the parties to this controversy that

if the Constitution authorized the Legislature to transfer duties from one officer to another officer, then the act of the Legislature making a transfer of duties under constitutional authority would be valid.

The case of Francis, Mayor of St. Louis, v. Blair et al., Police Commissioner, 1 S. W. 297,is relied upon as supporting the construction placed upon section 11, art. 2, by the plaintiff in this action. In this case the board of police commissioners,appointed by the Governor of the state of Missouri, undertook by resolution to deprive the mayor of St. Louis, an elective municipal officer of said city, of the control of the police. The court held, that the duties of the mayor of St. Louis being prescribed by an act of the Legislature of the state, the board of police commissioners appointed by the Governor of the state were without authority to deprive the mayor of any of his duties as they were prescribed by the Legislature of the state. The case is not in point in the case at bar. No one would contend that a board of aldermen in an incorporated town, or city, of Oklahoma, whose authority is defined by the general statutes of the state, and where the various officers of such city or town derive their authority only by virtue of the general laws of the state, would have authority to change the statutory duties of any city or municipal officer.

In the case at bar, upon a careful consideration of the issues involved and an examination of the authorities, I conclude that Oklahoma City adopted its charter under the authority of the Constitution, and under the Constitution the people of Oklahoma City have the absolute right to local government, and that the matter as to who controls the police and city jail of Oklahoma City is purely a municipal matter, and that a court of equity is without jurisdiction to issue the extraordinary writ of injunction and interfere in a purely municipal governmental affair where the action sought to be enjoined is clearly authorized under the plain provisions of the city charter; that section 11, art. 2, of the charter was incorporated in the supreme law of the city in order to give a proper degree of elasticity to the charter, so that in times of emergency the public interest would not be allowed to suffer by reason of the inefficiency or dereliction of one commissioner. No doubt, the drafters of the charter had in mind that four of the five commissioners could be depended upon to properly represent public opinion and act for the best interest of the city in case of emergency.

It was suggested in the oral argument of the cause that in the fall of 1918, during the epidemic of influenza, when the death rate was between ten and twenty per day and thousands were seriously ill, the commissioner in charge of the health department failed to discharge his duties satisfactorily to the public and that the commissioners by a vote of four out of the five, the present plaintiff, then mayor, concurring in the vote, acting under the authority of section 11, art. 2, transferred the duties of the commissioner of public health to another department. This only demonstrates the wisdom of the drafters of the charter in providing for an elastic form of government to meet the changing conditions. This shows conclusively that the only question involved in this cause is the intent to be derived from the section of the charter under consideration. I cannot believe that it was the intention of the framers of the charter to safeguard the transferring of incidental duties not provided for in the charter by so much caution as to require a vote of four out of the five commissioners to transfer such incidental duties, but the logical and reasonable conclusion is that they intended to vest the commissioners with the power to meet emergencies.

It appears to the writer of this opinion, with great deference to majority opinion herein, that the construction that they have placed on the charter falls within the proverb of Judge Lamm, of the Supreme Court of Missouri, when he said:

"Strained and unnatural statute construction smacks of wringing the words so hard the meaning extracted is bitter, even as the wringing of the nose brings blood."

I am authorized to state that Mr. Justice MILLER concurs in this opinion.